425 So.2d 12 (1982)
Joseph D. FARISH, Jr., and Joseph D. Farish, Jr., As Administrator of the Estate of Joseph D. Farish, Deceased, D/B/a Farish & Farish, a Partnership, Appellants/Cross Appellees,
v.
BANKERS MULTIPLE LINE INSURANCE COMPANY and First Marine Bank & Trust Company of the Palm Beaches, As Ancillary Administrator of the Estate of John D. MacArthur, Deceased, Appellees/Cross Appellants.
Nos. 79-2431, 79-2432.
District Court of Appeal of Florida, Fourth District.
September 22, 1982.
Rehearing Denied February 1, 1983.
*14 Montgomery, Lytal, Reiter, Denney & Searcy, P.A., and Edna L. Caruso, West Palm Beach, for appellants/cross appellees.
Michael P. Mullen of Burke, Griffin, Chomicz & Wienke of Chicago, Ill., and Larry Klein, West Palm Beach, for appellees/cross appellants.
Montgomery, Lytal, Reiter, Denney & Searcy, P.A., and Edna L. Caruso, West Palm Beach, for Rosemary Barkett, Ken Slinkman, and Hubert R. Lindsey, amicus curiae in support of appellant.
PER CURIAM.
Appellants, plaintiffs below,[1] seek reversal of an order which granted appellee Bankers Multiple Line Insurance Company's (Bankers) motion for new trial and claim further error in their not obtaining a new trial on the claim against the Estate of John D. MacArthur, deceased. Appellees have cross appealed and contend that the trial court erred in denying Bankers' motion for judgment in accordance with its motion for directed verdict. We have jurisdiction. Fla.R.App.P. 9.030(b)(1); 9.130(a)(4); 9.110(h).
This appeal involves an action for tortious interference with a lawyer's representation contract in which the jury found against Bankers and awarded appellants Joseph D. Farish, Jr., et al. d/b/a Farish & Farish, a partnership, $50,000 compensatory damages and $2,000,000 punitive damages. The jury also found in favor of the estate of MacArthur and against appellants.
John D. MacArthur, now deceased, was chairman of the board and president of Bankers, a subsidiary of Bankers Life and Casualty Insurance Company (Bankers Life). Bankers insured a vehicle involved in an accident which caused Donald Eugene Smith's death. MacArthur also owned and lived at the Colonnades Beach Hotel where Jill Smith (Jill) had worked as a waitress for three months prior to her husband's death. Although the parties disagree as to the sequence of events and as to the interpretation to be placed on the actions of MacArthur and others acting at his direction, the record demonstrates sufficient evidence to support the jury's verdict in favor of appellants and against Bankers. Neither party has challenged the sufficiency of the evidence.
On March 31, 1973, the day following the wrongful death of her husband, Jill executed contingent fee contracts with Farish & Farish, a partnership, for the claims arising out of her husband's death. The events which followed resulted in this action for tortious interference with contract.
After her husband's funeral, Jill remained in Illinois and lived with her parents. MacArthur contacted Paul Doolen, Vice Chairman of Bankers Life, and instructed him to see Jill. Doolen saw Jill about three weeks after the accident and offered her a job with Bankers Life and to place her on a group health insurance policy with maternity benefits. Jill was pregnant and she accepted the insurance coverage but rejected the job offer. Doolen testified that group insurance policies require that the insured be a present employee of Bankers Life, which Jill was not, but he said, "MacArthur said what he wanted done and we did it." Jill told Farish about Doolen's contact. Farish admonished Jill to have no further contact with Doolen or MacArthur and wrote MacArthur's attorney and protested MacArthur's conduct. On June 18th, MacArthur wrote Jill a letter in which he suggested that she had misunderstood his *15 remarks and Doolen's visit, admitted that he had discussed the legality of the representation contract, and suggested that a settlement could be reached before the baby was born. Jill contacted Farish in July, 1973 and told him she wanted to settle the case and that she did not want suit filed. However, suit had been filed on June 22, 1973. After this telephone conversation, Jill accepted MacArthur's offer to provide her with an airline ticket to West Palm Beach. She came to West Palm Beach in August, 1979, and discharged Farish. MacArthur introduced Jill to Evelyn Flack, an attorney with no trial experience in personal injury or wrongful death cases. The evidence demonstrates that Farish's involvement in the case upset MacArthur, that MacArthur unbeknown to Jill encouraged the owner of the truck involved in the accident to divest the corporation of its assets, that he admitted that he had had Doolen contact Jill to attempt to convince her to fire Farish so that he could settle the case with Jill himself and that MacArthur's influence on Jill caused her to be uncooperative and antagonistic to Farish in the wrongful death action.
It should be noted that at Flack's suggestion, Jill resigned as personal representative of her husband's estate and Jill's successor rehired Farish to prosecute the action on behalf of the estate. Flack was appointed to the bench in North Florida and Jill hired Lake Lytal to represent her in the wrongful death action. Farish and Lytal tried the case and the jury returned a verdict of $118,000. Hubert Lindsey testified that the case had a jury verdict range of from $500,000 to $1,000,000, Farish testified that he had evaluated the case at $1,350,000. Appellants asserted that MacArthur's actions caused them to suffer a reduced fee in the wrongful death action.
Joseph D. Farish, Jr., d/b/a Farish and Farish, a partnership, filed suit against the appellees for tortious interference with contract. The trial court dismissed the original complaint for failure to join an indispensable party. Farish amended the complaint and added the Estate of Joseph D. Farish, deceased, as party plaintiff. On July 5, 1979, during the course of trial, appellees moved again to dismiss the complaint for failure to join indispensable parties and asserted that in 1973, Rosemary Barkett, Lindsey and Ken Slinkman were partners in the appellant law firm. The trial court reserved ruling on the motion but later cited the failure to join indispensable parties as one of the reasons for granting a new trial as to Bankers. In addition, the trial court determined that Lindsey's testimony should have been excluded because he was an interested party, and that its instruction on punitive damages failed to apprise the jury that it had discretion in awarding punitive damages. The trial court denied appellants' motion for a new trial on their claim against the Estate of MacArthur.
The parties have raised numerous points on appeal. Appellants challenge the trial court's order granting a new trial to Bankers and further contend that the trial court erred in holding: that Barkett, Lindsey and Slinkman were indispensable parties; that Lindsey's testimony should have been excluded because he was an interested party; and that its instruction on punitive damages failed to apprise the jury that it had discretion in awarding punitive damages. Appellants also contend that the trial court erred in failing to grant a new trial as to MacArthur's estate. Appellees in their cross appeal contend: that the jury verdict in favor of the Estate of MacArthur entitles Bankers to have the judgment against it set aside; and, that Bankers cannot be held liable for punitive damages. Both parties raised additional issues which we need not discuss.
We will first consider whether or not the trial court erred in granting a new trial to Bankers because of appellants' failure to join Barkett, Lindsey and Slinkman as party plaintiffs.
A dispute exists between Farish and Barkett, Lindsey and Slinkman as to the extent of their interest in Farish & Farish and more particularly as to their interest in *16 the outcome of the case sub judice.[2] The amended complaint named Joseph D. Farish, Jr., and Joseph D. Farish, Jr., as administrator of the Estate of Joseph D. Farish, deceased d/b/a Farish & Farish, a partnership, as party plaintiffs. The trial judge stated in his ruling that Barkett, Lindsey, and Slinkman were indispensible parties, and that he relied upon a stipulation which appellants claim that their counsel erroneously made but which counsel withdrew during an unreported meeting with appellees' counsel. The stipulation stated that the law firm of Farish & Farish, a partnership, filed Federal partnership income tax returns for the years 1973 through 1978 which reflected that Lindsey and Barkett were partners in those years.
Appellees cite Aronovitz v. Stein Properties, 322 So.2d 74 (Fla. 3d DCA 1975), to support the trial court's order directing a new trial as to Bankers:
Since the common law does not recognize a partnership as a legal entity distinct from and independent of the persons composing it, a partnership cannot, as such without statutory authority, sue in its firm name. All actions by a partnership must be brought in the names of its individual members... . Therefore, the trial court should have granted appellant's motion to dismiss for failure to join an indispensible party. (Emphasis added.)
Florida Rule of Civil Procedure 1.210(a) provides in part:
Any person may at any time be made a party if his presence is necessary or proper to a complete determination of the cause.
The joinder of indispensable parties protects the defendant from the inconvenience and expense of defending multiple separate suits arising out of the same single claim and eliminates the defendant's exposure to multiple separate judgments arising out of the same claim. Lewis v. Hall, 271 S.W.2d 447 (Tex.Civ.App. 1954); Yorkshire Insurance v. United States, 171 F.2d 374 (3d Cir.1948).
This cause of action arose on August 9, 1973 when Jill discharged the law firm of Farish & Farish. Therefore, the statute of limitations began to run at that time and expired on August 9, 1977. Barkett, Lindsey and Slinkman could not have filed a separate law suit on July 5, 1979, when appellees made the motion for new trial. Their presence in the law suit was not necessary to a complete determination of the cause and therefore they were not indispensable parties as contemplated by Florida Rule of Civil Procedure 1.210(a). Further, Barkett, Lindsey, and Slinkman made no attempt to intervene in this case until four months after final judgment had been entered, when they filed a pleading styled "Notice of Intervention." Six months after final judgment, and two months after plaintiff filed his notice of appeal, one Earl Maxwell also sought to "intervene." We cannot say what other persons unknown to this court may subsequently appear, claiming a partnership interest in the firm of Farish & Farish and a share of the judgment sub judice. After August 9, 1977, any such claims have clearly expired as against appellees, cannot prejudice appellees, and should not be used by appellees to delay the resolution of the claim which was properly before the court below.
We do not construe the holding in Aronovitz, supra, as requiring the joinder of persons who may have an interest in a partnership, when the action is brought in the name of those persons acknowledged as partners and where the passage of time has extinguished the claims against the defendants from those persons claiming an interest in the partnership. Since the law suit was brought in the individual names of the acknowledged partners in the law firm of Farish & Farish and the claims of the disputed partners against appellees had been extinguished by the passage of time, we conclude that the trial court erred in ruling that Barkett, Lindsey and Slinkman were indispensable parties to this cause of action.
*17 Appellants next contend that the trial court erred when it concluded that it should have excluded Lindsey's expert testimony because of his interest in the law firm of Farish & Farish. We agree. Lindsey's interest, if any, may have affected the weight of his testimony, but his interest did not preclude its admissibility.
No person, in any court, or before any officer acting judicially, shall be excluded from testifying as a witness by reason of his interest in the event of the action or proceeding, or because he is a party thereto; ... .
Section 90.05, Florida Statutes (1975).[3] The courts regularly permit interested persons to testify as expert witnesses, e.g., a defendant doctor in a medical malpractice case, an engineer or architect in a construction defect case, a defendant lawyer in a legal malpractice case, etc.
We find no merit in Bankers' contention that Lindsey's joinder as a party plaintiff would have affected the weight given by the jury to his testimony. After plaintiff's counsel qualified Lindsey as an expert and began to question him as to the value of the case, defendants objected on the grounds that Lindsey was a partner in Farish & Farish at the time "all this went on." Plaintiff's counsel argued that such interest, if any, goes to the weight of the testimony rather than its admissibility, and pointed out that defendants could on cross examination examine the basis for his opinion and any motive Lindsey might have with regard to pecuniary gain. The defendants conducted vigorous cross examination of Lindsey on precisely these matters. Further, in closing argument, defense counsel argued this to the jury:
They just broke up a partnership a few months ago. Lindsey, you will recall, said that they've got a pot of money from cases that they, Lindsey and Farish, are gonna split up at a later point in time. Lindsey, it appears was a partner of Mr. Farish at the time that this suit was filed ... Mr. Lindsey, I would submit, has an interest in the outcome of this case, because of that arrangement. Now, that reason, and that reason only is enough to just disregard his testimony.
The record amply demonstrates that appellees fully apprised the jury of Lindsey's relationship to the firm and possible interest in the outcome of the case sub judice. Therefore, the trial court erred in granting a new trial based on the admission of Lindsey's expert testimony.
Appellants also argue that the trial court erred when it decided that it should have given the Florida Standard Jury Instruction on punitive damages.
The trial court gave the following instructions:
The measure of compensatory damages in an action for tortious interference with contract is the difference between the value actually received by the Plaintiff under the contract and the value the Plaintiff would have received had there been no interference. If you find the plaintiff law firm has failed to prove to your satisfaction damages or loss proximately attributable to wrongful acts of interference on the part of John D. MacArthur or Bankers Multiple Line Insurance Company, then the Plaintiff law firm is precluded from any further recovery of damages in this action.
You are instructed that in Count II of the complaint there is a claim for exemplary or punitive damages, and by this is meant damages which are awarded, if at all, by way of punishment or example to the party, and as a deterrent to others. Exemplary or punitive damages can only be allowed only when it is alleged in the complaint and established at trial that the defendant acted with malice, moral turpitude, wantonness, wilfulness or reckless indifference to the rights of the plaintiff.

If you find that punitive damages should be assessed against either or both *18 defendants, you may consider the financial resources of such defendant in fixing the amount of such damages. In considering the financial resources of any defendant for the purpose of imposing punitive damages, you may not consider reputed financial resources. Your consideration may extend only to the net worth of the defendant. You may assess punitive damages against one defendant and not the others, or against more than one defendant in different amounts.
Let me read that sentence over again. You may assess punitive damages against one defendant and not the other, or against more than one defendant in different amounts.
In determining the amount of punitive damages to be assessed, you should all, you should also consider that punitive damages are punishment of each wrongdoer, by exacting from his pocketbook a sum of money which, according to his financial ability will hurt, but not bankrupt.
An award of punitive damages need not bear any particular relation to the compensatory damages awarded. The greater the defendant's wealth, the greater it must be, the punitive damages assessed in order to get his attention regardless of the amount of compensatory damages awarded to the plaintiff. (Emphasis added.)
The trial judge stated that his failure to give Florida Standard Jury Instruction 6.12 constituted error because the instruction as given fails to inform the jury of its discretion to assess punitive damages. The standard jury instruction provides:
If you find for plaintiff and find also that the defendant acted with malice, moral turpitude, wantonness, wilfulness or reckless indifference to the rights of others, you may, in your discretion, assess punitive damages against such defendant as punishment and as a deterrent to others. If you find that punitive damages should be assessed against the defendant, you may consider the financial resources of such defendant in fixing the amount of such damages. [You may assess punitive damages against one defendant and not the others or against more than one defendant in different amounts.]
We find no meaningful difference between the charges given and the standard jury instruction. The emphasized language of the two charges demonstrates that the court informed the jury of its discretion to award punitive damages. The charges given include the elements which form the basis for punitive damages, i.e., the defendants' malice, moral turpitude, wantonness, wilfulness or reckless indifference to the rights of the plaintiff.[4]
In a related point on cross appeal, Bankers contends that the trial court erred when it charged that "... the greater the defendant's wealth, the greater it [sic] must be, the punitive damages assessed in order to get his attention regardless of the amount of compensatory damages awarded to the plaintiff." Taken out of context it would appear that the charge mandates the jury to consider only the relative wealth of the defendant in assessing punitive damages. However, when considered in the light of the totality of the charge, we find no harmful error. Further, this portion of the instruction is a paraphrase of language set forth in Lassiter v. International Union of Operating Engineers, 349 So.2d 622 (Fla. 1977) wherein the Supreme Court considered whether punitive damages must bear any particular relationship to compensatory damages. The Court analyzed the history of conflicting District Court opinions and stated:
The error in embracing [a rule that the amount of punitive damages must bear a reasonable relation to the compensatory damage award] is made apparent in circumstances *19 where the conduct by a very affluent defendant is outrageous by the resultant injury or invasion of legal rights to the plaintiff is minimal, although the conduct has the propensity of causing great harm if continued. Subject to the other limitations mentioned in this opinion, the jury is the best judge of the amount necessary to be assessed in order to make an example of such a defendant and thereby deter him and others from such conduct in the future. The more pecunious the defendant the greater must be the punitive damages assessed in order to "get his attention" regardless of the amount of actual damages awarded the plaintiff. For these reasons we disavow the rule that punitive damages must bear some reasonable relationship to the actual damages awarded by the jury.
Id. at 626. The trial judge used the language in question in the same way as did the Supreme Court, to explain and to emphasize that punitive damages need not bear any relationship to the amount of compensatory damages.
Finally, we will consider together three interrelated points on appeal. Appellants contend that the verdict against Bankers entitles them to a new trial against MacArthur's estate because it demonstrates that MacArthur interfered with their representation contract. Appellees contend that the verdict in favor of MacArthur's estate exonerated MacArthur of tortious conduct, thereby entitling Bankers to directed verdict. Appellees contend in the alternative that even if this court permits the compensatory damage award to stand, the award of punitive damages must be reversed under Mercury Motors Express, Inc. v. Smith, 393 So.2d 545 (Fla. 1981). We conclude that by their tactical maneuvering, the parties provided for the result the jury reached.
Appellants' amended complaint alleged that:
John D. MacArthur, acting in his own behalf individually and in the course and scope of his employment with Bankers Multiple Line Insurance Company and as owner and principle stock holder having dominant control of the defendant ... set about a course of conduct ... to interfere with [appellants'] contract of employment with Jill Smith as aforesaid.
MacArthur was the president and chairman of the board of Bankers and the sole stockholder of Bankers Life which owned the stock of Bankers. The record contains an abundance of evidence from which the jury could find, and by its verdict did find, that Bankers acted through its officer, MacArthur. As Doolen testified, "MacArthur said what he wanted done and we did it." The trial court's instruction to the jury separated the claim against Bankers from the claim against the estate and provided a basis for the jury to find against one defendant and not the other.
In your deliberations you are to consider two distinct claims. The first claim is against Bankers Multiple Line Insurance Co. The second claim is against ... the Estate of John D. MacArthur, deceased.
The court also instructed the jury that MacArthur could act in two separate capacities.
The court instructs you as a matter of law that any acts by John D. MacArthur in his capacity as a corporate officer of Bankers Multiple Line Insurance Company were the acts of Bankers Multiple Line Insurance Company. Any knowledge possessed by John D. MacArthur in any state of mind entertained by him while acting in his capacity as a corporate officer are likewise attributable to Bankers Multiple Line Insurance Company.
If you believe from the greater weight of the evidence that John D. MacArthur was acting solely in his individual capacity and not as an officer, agent or employee of Bankers Multiple Line Insurance Company, and all the necessary elements are proven by the greater weight of the evidence then liability can only be imposed upon his ancillary estate for such actions.
The court gave no corresponding instruction which would have provided for a verdict against both Bankers and the Estate. During the charge conference, appellees' *20 counsel tendered the following proposed instruction:
If you believe from a greater weight of the evidence that John D. MacArthur was acting in his individual capacity and all the other necessary elements are proven by the greater weight of the evidence, then liability can be imposed only upon his ancillary estate for such actions.
Appellant's counsel objected on the ground that the instruction does not take into account the fact that MacArthur might act simultaneously both in his individual capacity and in his representative capacity. The judge revised the instruction to read "that John D. MacArthur was acting solely in his individual capacity and not as an officer, agent or employee of Bankers Multiple Line Insurance Company... ." All parties agreed to this instruction. This conversation is the only time that either party mentioned an instruction on the liability of both MacArthur and Bankers, based on the theory of respondeat superior. Neither party tendered an instruction on respondeat superior, and the judge gave no such instruction. As a result, the instructions gave the jury two options: to find against MacArthur individually, or to find against the corporation on the theory of direct liability. The parties set the stage for this precise result. When the clerk published the verdict, neither party challenged the jury's finding because of any purported inconsistency in the result.
We conclude that the jury found that MacArthur acted only in his capacity as president and chairman of the Board of Bankers, that Bankers alone should be held directly liable, and that such a finding was permissible under instructions which the parties contemplated. This conclusion disposes of appellees' contention that the punitive damage award should be set aside under Mercury Motors, supra, in which the Supreme Court reversed an award of punitive damages entered against the corporate defendant. Unlike the case sub judice, the jury therein had found the corporate defendant vicariously liable for the action of a truck driver employee on a respondeat superior theory. Mercury Motors did not consider the question of direct liability of a corporation which acts through an officer.
Accordingly, we affirm the trial court's denial of the motion for new trial as to the Estate of John D. MacArthur, deceased, and reverse the trial court's order granting a new trial as to Bankers Multiple Line Insurance Company and remand this case with instructions to reinstate the verdict in favor of the appellants, to enter judgment against Bankers and for such further orders as may be consistent herewith.
AFFIRMED IN PART, REVERSED IN PART and REMANDED.
GLICKSTEIN and DELL, JJ., and ALAN R. SCHWARTZ, Associate Judge, concur.
NOTES
[1] After the order granting a new trial but before the time for rehearing, Rosemary Barkett, Hubert Lindsey and Ken Slinkman filed a "Notice of Intervention" as plaintiffs in this action. This court granted appellees' motion to strike Barkett, Lindsey and Slinkman as appellants, but permitted them to file a brief as amicus curiae.
[2] Their status vis-a-vis Farish & Farish has yet to be determined.
[3] The Florida Evidence Code has replaced Section 90.05, Florida Statutes (1975), and provides:

Every person is competent to be a witness, except as otherwise provided by statute. Section 90.601, Florida Statutes (Supp. 1976).
[4] However, we note that the trial judge failed to state his reasons for departing from the standard jury instructions as required by In re Standard Jury Instructions, 198 So.2d 319 (Fla. 1967); In re Florida Rules of Civil Procedure, 211 So.2d 174 (Fla. 1968); and Form 1.985, Florida Rules of Civil Procedure. We need not reach this point since neither party has raised this requirement on appeal.