483 So.2d 717 (1985)
Nick DeTORO, Appellant,
v.
DERVAN INVESTMENTS LIMITED CORP., Francis T. Ryan, et al., Appellees.
Nick DeTORO, Appellant,
v.
Francis T. RYAN, Dervan Investments Limited Corp., et al., Appellees.
DERVAN INVESTMENTS LIMITED CORPORATION, Appellant,
v.
Francis T. RYAN; Ryan, Ryan and Fitzgerald; Wilcox Gallery of Homes, Inc., Jack Lonergan, Louis E. Sousa and Nick DeToro, Appellees.
Nos. 84-1338, 84-1452 and 84-1776.
District Court of Appeal of Florida, Fourth District.
November 20, 1985.
As Amended on Denial of Rehearing March 26, 1986.
Rehearing Granted March 26, 1986.
*719 E. Cole Fitzgerald, III, of Moyle, Flanigan, Katz, Fitzgerald & Sheehan, P.A., West Palm Beach, for appellants.
Jack M. Coe of Lee, Schulte, Murphy & Coe, P.A., Miami, for appellees-Francis T. Ryan, and Ryan, Ryan and Fitzgerald.
Roger C. Lambert, North Palm Beach, for appellees-Jack Lonergan and Jack Lonergan Real Estate Ltd.
David L. Gorman of Gorman and Horvath, North Palm Beach, for appellee-Louis E. Sousa.
PER CURIAM.
These consolidated appeals arise from three separate final orders entered in this case. Two of the orders based upon motions by different defendants, dismiss appellant Nick DeToro from the suit for lack of standing to sue as a party plaintiff. The third order is a final judgment based upon a directed verdict in favor of the defendants at the close of plaintiff's case.
DeToro and Dervan sued appellees in a ten-count second amended complaint essentially charging appellee Ryan and his law firm with breach of a fiduciary relationship and appellees Lonergan and Sousa with breach of a fiduciary/agent relationship arising out of their activities as real estate *720 agents. The complaint also sought damages from each of the three defendants for breach of an option contract. The factual situation presented in a light most favorable to appellants is that Lonergan and Sousa, real estate agents, in January 1979 interested DeToro in a parcel of land on Singer Island in Palm Beach County, known as the Borelli tract. Upon recommendation of the realtors, DeToro employed appellee Ryan to represent him in the purchase of said property and to take title for him as trustee. In all of his dealings regarding Florida property DeToro was acting as agent for a Canadian corporation, Dervan Investments Limited Corporation.
After DeToro returned to his home in Toronto, Canada, he was contacted by Lonergan or Sousa with reference to another piece of property on Singer Island known as the Howard tract. DeToro came back to Florida to look at the Howard tract and became interested. He and the realtors eventually went to Ryan's office, apprised him of their interest in the property and asked Ryan to determine the price, zoning and other particulars and to serve as trustee for DeToro. Ryan determined the property owner was represented by John Remsen, a prominent Riviera Beach lawyer, and from him learned the price for the property was $4,230,000. He advised DeToro of this information and was instructed to prepare a contract offer of $3,500,000. To DeToro's surprise, upon his return to Florida to sign this contract offer, Ryan advised him that he had already contracted to buy the property for $4,230,000, and had put up a $25,000 deposit with an additional payment of $175,000 due April 6. Although DeToro was not entirely happy with this turn of events, because he felt he could possibly have gotten it cheaper, he wanted the property and thus acceded to the situation.
In March 1979 DeToro showed the property to four business associates from Canada to see if he could interest them in participating in the acquisition and development of the property. They agreed to meet and discuss it later in Canada. Shortly thereafter, a survey was furnished which reflected the property was four and one-half acres larger than DeToro and the brokers had anticipated. As a result the realtors felt they should get a larger commission and DeToro agreed to pay them an additional $300,000 if the survey proved accurate.
Several days before DeToro was due in Florida with the $200,000 to comply with the Howard contract he met in Toronto with his business associates referred to in this case as the Blackstein group. They discussed forming a partnership or joint venture for the development of both the Borelli and Howard properties. It was decided that Blackstein's group would participate to the extent of seventy percent and Dervan thirty percent of the venture. Blackstein's group was to put up the deposit of $200,000 required by the Howard contract because Dervan had already put up the deposit of $150,000 on the Borelli contract. The specific interest of the different participants was not concluded nor was it decided whether the partnership would be composed of individuals or corporations. These matters were left for further negotiation. However, before those attending this meeting dispersed they were advised by Lonergan that he had just learned that there was no need to go to Florida with the money because Ryan had sold the property. After some discussion DeToro and Lonergan decided to come to Florida the next day and see a Miami lawyer, David Lazan, recommended by Blackstein. DeToro, Lonergan and Lazan came to Ryan's office to deliver the $200,000 due April 6, however, Ryan would not accept it. Ryan wanted payment also of the $300,000 additional brokerage commission which was not due until closing of the transaction. At this meeting Lazan is supposed to have asked Ryan if he was acting for DeToro, to which Ryan replied that "he didn't know if he was acting for [DeToro] on that day or not." During the early part of April, just before this meeting, Ryan conveyed the property to a corporation controlled by Ryan and some of his law partners. Sometime the following year the corporation sold the *721 property to Palm Beach County for $7,750,000.
This suit was filed in November 1979 and finally came to trial in 1984. Prior to trial the court granted a summary judgment dismissing DeToro as a party plaintiff. DeToro suggests that he was entitled to maintain the action under Rule 1.210(a), Florida Rules of Civil Procedure. We reject that contention because DeToro acted at all times for Dervan so that the real party in interest here is Dervan. Furthermore, Dervan is a party plaintiff asserting the same claims in the complaint that DeToro made. Thus, DeToro's presence as a party plaintiff is clearly surplusage and would appear to be an effort at double recovery. We find no error demonstrated by appellant's point II.
At the conclusion of the plaintiff's case all defendants moved for direction of a verdict against the plaintiff, Dervan, on the ground, among others, that the plaintiff had failed to join the Blackstein group as plaintiffs; that said group as Dervan's partners in this project were indispensable parties to the litigation. Based upon that contention, the trial court granted the motion and directed a verdict for all defendants. This judicial act constitutes the subject matter of appellant's first point on appeal.
Under Florida law a partnership may not sue in the partnership's fictitious name; partnership litigation must be pursued in the name of the individual partners. Farish v. Bankers Multiple Line Ins. Co., 425 So.2d 12 (Fla. 4th DCA 1982), modified, 464 So.2d 530 (Fla. 1985); Aronovitz v. Stein, 322 So.2d 74 (Fla. 3d DCA 1975). Each partner is deemed to have an interest in the chose in action and thus is an indispensable party to the suit. Only by joinder of such party can the defendant be protected from possible double liability and the inconvenience and expense of additional litigation. However, not every person who may possibly be a partner is an indispensable party. Farish, 425 So.2d at 16. As the court said in Farish:
We do not construe the holding in Aronovitz, supra, as requiring the joinder of persons who may have an interest in a partnership, when the action is brought in the name of those persons acknowledged as partners and where the passage of time has extinguished the claims against the defendants from those persons claiming an interest in the partnership. Since the law suit was brought in the individual names of the acknowledged partners in the law firm of Farish & Farish and the claims of the disputed partners against appellees had been extinguished by the passage of time, we conclude that the trial court erred in ruling that Barkett, Lindsey and Slinkman were indispensable parties to this cause of action.
425 So.2d at 16.
While this case presents a slightly different scenario, the Farish holding is helpful. Here we have the contention that plaintiff Dervan was one of a number of partners and thus he cannot maintain the suit alone; the other partners are indispensable parties. Dervan, on the other hand, contends that the others were not legal partners vis-a-vis the employment of Ryan and the realtors and the purchase of the Howard tract. Unquestionably, Dervan, through its agent DeToro, anticipated there would be partners in the acquisition and development of the property; they had discussed it with Blackstein and his associates who intended to participate and had even advanced money for the deposit on the Howard tract. However, the evidence most favorable to Dervan is that the partnership deal had not been finalized; the parties had not concluded all of the ramifications of the venture including who the actual partners were to be. DeToro testified, and other evidence corroborated this, that he could not name the actual partners because the exact composition of the partnership, individual or corporate, had not yet been determined. At the point where the negotiations stopped, no partnership as a legal entity existed. Instead, we have negotiations, meetings and discussions indicating that a number of long time business *722 associates intended to form a partnership to develop a piece of property. As appellant argues, the term "partner" was loosely used by these people and does not prove a partnership. On the other hand there is evidence from which the jury might find there was a partnership. They called themselves partners, money was advanced toward the purchase of the property, and the interest of Dervan and the Blackstein group in the partnership had been decided upon. But the old saying goes, if it looks like a duck and walks like a duck ... doesn't necessarily apply here. The determining factor as to whether a partnership relation is created between parties to a real estate transaction is one of intent. 8 Fla. Jur.2d Business Relationships § 448. If the parties are unaware of the exact identity of the partners, one could hardly insist upon them being named as parties. There is evidence here which indicates the actual partners had not yet been identified and viewing the evidence in the light most favorable to the plaintiff, as we must do, a factual issue was created by this evidence which in our judgment precluded the trial judge from resolving the issue. The jury may well have found there was a partnership and that the partners were sufficiently identifiable, but they also may have found to the contrary.
Furthermore, it appears that the Blackstein group, even if clearly identifiable as partners, were no longer indispensable parties when the motion for directed verdict was made because the statute of limitations had run on their alleged claims arising out of this situation. Farish v. Bankers Multiple Line Insurance Co., 425 So.2d at 16.
We find no merit in appellees' argument that Farish is distinguishable from the facts of this case, where members of the Blackstein group were acknowledged as partners, based upon the above quoted language from the Farish opinion. It appears that the bottom line of this court's opinion in Farish is that the underlying rationale of the rule requiring joinder of indispensable parties, i.e., to protect the defendant from the expense of defending multiple separate lawsuits and the exposure to multiple separate judgments arising out of the same claim, was eliminated by the expiration of the statute of limitations. Likewise, in the present case, at the time appellees moved to dismiss based upon appellant's failure to join indispensable parties, the statute of limitations had already run on the potential claims of the members of the Blackstein group against appellees.
Since the case must be retried we deem it advisable to treat appellant's third point regarding evidence of damages.
Appellant sought to introduce evidence of the sale of the property by Ryan's corporation over a year after the breach for $7,750,000 as demonstrative of the enormity of the wrong perpetrated upon him. Appellant also attempted to introduce evidence that the fair market value of the Howard tract had increased at a rate of five percent a month from April 4, 1979, the date of the alleged breach, and May 30, 1979, the date of closing. The trial court ruled such evidence inadmissible. That ruling constitutes the specific basis of appellant's third point.
On retrial the question of damages is wide open again. Thus, appellant is entitled to adduce evidence of compensatory damages such as the difference between the value of the property and its contract price together with any expenses to which it was put as a direct result of this breach. "Loss of bargain" damages, which is the difference in value between the price the purchaser had agreed to pay and the value of the property on the date of closing, may be recovered by the purchaser where evidence of bad faith exists. Wolofsky v. Behrman, 454 So.2d 614 (Fla. 4th DCA 1984); Bosso v. Neuner, 426 So.2d 1209 (Fla. 4th DCA), pet. for rev. denied, 436 So.2d 100 (Fla. 1983). Black's Law Dictionary, 4th Edition, defines bad faith as:
The opposite of "good faith," generally implying or involving actual or constructive fraud, or a design to mislead or deceive another ... or sinister motive... .

*723 ... [contemplating] a state of mind affirmatively operating with a furtive design or some motive of interest or ill will.
Bosso, 426 So.2d at 1212. Appellees' alleged conduct in this case, in appropriating for themselves the land sales contract that they had procured on appellant's behalf, appears to fall within the above definition of bad faith.
However, the only evidence appellant intended to present concerning loss of bargain damages was expert witness Joe Price. Price's deposition was taken shortly before trial wherein he testified that he had been retained to give an opinion as to the market value of the Howard tract as of April 2, 1979, only, and he had no other opinion at that time. At trial, appellant's counsel announced for the first time that he intended to elicit testimony from Price concerning the increase in value of the property from April 4, 1979, to May 30, 1979. Pursuant to appellees' objections, the trial court properly disallowed the above testimony of Price as a sanction to avoid prejudice to the appellees. We find that the trial court acted within its discretion in disallowing such testimony, which would have resulted in unfair surprise to appellees. However, upon retrial, the testimony of Price on loss of bargain damages would appear to be admissible as the surprise factor will be eliminated.
In support of the claim for punitive damages, appellant is entitled to prove the nature, extent, and enormity of the wrong, the intent of the party committing it, and generally all of the circumstances attending the particular transaction involved. Rinaldi v. Aaron, 314 So.2d 762 (Fla. 1975); 22 Am.Jur.2d Damages § 263. The substantial increase in the value of the property during the interval and the benefits accruing to the alleged wrongdoer seem relevant to the well known purposes of exemplary damages. Furthermore, the apparent substantial profit could be relevant on the question of the defendant's net worth. Therefore, upon retrial, in support of its claim for punitive damages, Dervan should be permitted to introduce evidence of the profit made by appellees from the eventual sale of the property.
Accordingly, the dismissal of DeToro as a party plaintiff and the direction of a verdict in favor of Wilcox Gallery of Homes, Inc., is affirmed. The remainder of the judgment entered upon directed verdict for the remainder of the defendants is reversed and the cause is remanded for a new trial.
DOWNEY and HURLEY, JJ., and RIVKIND, LEONARD, Associate Judge, concur.