# Third District Court of Appeal
## State of Florida

Opinion filed March 26, 2025.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D23-2157
Lower Tribunal No. 22-CA-34-P
_____

**Angel Tomas,**
Appellant,

vs.

**Dmitry Sandler, DPM, et al.,**
Appellees.

An Appeal from the Circuit Court for Monroe County, Luis Manuel Garcia, Judge.

Gerson & Schwartz, P.A., Philip M. Gerson, and Edward S. Schwartz, for appellant.

McEwan, Martinez, Dukes, Hall & Vancol, P.A., Rafael E. Martinez, and Zachary D. Trapp (Orlando), for appellees, Dmitry Sandler, DPM and Southernmost Foot & Ankle Specialists, P.A.

Wicker Smith O'Hara McCoy & Ford, P.A. and Jessica L. Gross, for appellee, Mariners Hospital, Inc.

Before EMAS, MILLER, and BOKOR, JJ.

MILLER, J.

Dmitry Sandler, DPM performed an ankle replacement on Angel Tomas at Mariners Hospital, Inc.  After Tomas experienced wound dehiscence, osteomyelitis, and chronic infection, he brought negligent credentialing and apparent authority claims against Mariners and a medical malpractice suit against Southernmost Foot and Ankle Specialists, P.A., and Dr. Sandler, individually, alleging vicarious liability and medical negligence, respectively.  The trial court dismissed the claims against Mariners due to a deficient presuit corroborating expert affidavit and the remaining claims for failure to join the State of Florida and the Florida Department of Health as indispensable parties.  Tomas seeks review of this decision.

I

Tomas sustained a left ankle fracture and subsequently sought treatment from Good Health Clinic.  According to Dr. Sandler, the Clinic operates in conjunction with the Florida Department of Health Volunteer Health Care Provider Program, which provides healthcare services to the indigent.  The Clinic, in turn, referred Tomas to Dr. Sandler, a board-certified foot and ankle surgeon, at Southernmost.  Dr. Sandler performed total ankle replacement surgery on Tomas at Mariners Hospital using the Scandinavian Total Ankle Replacement ("STAR").

2

Following the surgery, Tomas purportedly suffered from loss of ankle function, as well as chronic infection and other complications. He served Mariners with a Notice of Intent to Initiate Litigation. Appended to the notice was the corroborating affidavit of Matthew D. Sorensen, DPM, another board-certified foot and ankle surgeon. Dr. Sorenson reviewed records from several providers, including the Clinic, Southernmost, Dr. Sandler, and Mariners, and opined that Dr. Sandler was negligent in multiple respects:

a. Providing excessive contraindicated serial steroid injections over an extended period prior to surgery

b. Fail[ing] to obtain an informed consent by disclosing to patient potential for outcomes as well as the recognized and foreseeable risks of surgical complications from the procedure.

c. Fail[ing] to obtain an informed consent by disclosing to patient the training, experience, and qualifications to perform ankle replacement surgery.

d. Fail[ing] to obtain an informed consent by disclosing to patient the surgical option of ankle fusion as an alternative to the ankle replacement surgery.

e. Performing a contraindicated surgical procedure based on the patient's prior history and co-morbid medical conditions and lifestyle.

f. Applying improper surgical techniques during ankle replacement surgery.

g. Fail[ing] to provide timely and appropriate post-surgical care complications for nonhealing surgical wounds and infection.

h. Fail[ing] to provide timely and appropriate recommendations for further surgery to treat the non-healing infected surgical wounds.

i. Performing a total left ankle replacement procedure in lieu of an ankle fusion procedure.

j. Undertaking a surgical procedure for which he lacked adequate qualification, training or experience to perform properly.

k. Fail[ing] to provide adequate conservative and palliative post-surgery care.

l. Fail[ing] to monitor Mr. Tomas adequately for infection or other complications.

m. Fail[ing] to obtain informed consent by advising Mr. Tomas adequately of the indications and contraindications for surgery and the optimal surgical technique to employ.

n. Fail[ing] to review applicable medical records of Mr. Tomas adequately before undertaking surgery, selecting a surgical technique, and performing surgery.

He then rendered the further opinion that

Mariners Hospital, Inc. fell below applicable standards of care for credentialing surgeons in credentialing and authorizing Dr. Sandler to perform a total ankle replacement procedure. It is therefore my opinion within reasonable medical probability that Mariners Hospital, Inc. fell below applicable standards of care in their supervision and credentialing of Dr. Sandler and was therefore negligent, and that this negligence resulted in injury to Mr. Tomas as summarized above.

Tomas brought suit against Dr. Sandler and the treating entities. In his third amended complaint, Tomas alleged medical negligence against Dr. Sandler, vicarious liability against Southernmost, and negligent credentialing and apparent authority against Mariners.[1] Several documents including a

---

[1] Although the Clinic is a named party in the lower court and this appeal, it was never served process.

referral form, Dr. Sandler's STAR training certificate, the Notice of Intent to Initiate Litigation, and Dr. Sorenson's affidavit[2] were attached to the complaint. The referral form contained the following language:

> The care you receive from the volunteer health care professionals will be provided at no charge to you. . . . By acceptance of this referral, you acknowledge that the [State of Florida] is solely liable for any injury or damage suffered by you . . . and that the State's liability is limited as found in section 768.28, Florida Statutes (copy provided).

Invoking this language, the treatment providers moved to dismiss the complaint on the basis that the State was an indispensable party. Mariners further sought dismissal of the negligent credentialing claim on the ground that Dr. Sorenson's presuit affidavit was deficient. The trial court dismissed the complaint, and this appeal ensued.

**II**

**A**

This appeal implicates several standards of review. We conduct a de novo review of an order granting a motion to dismiss a complaint with prejudice. Johansson v. Mia.-Dade Cnty. Value Adjustment Bd., 346 So. 3d 90, 92 (Fla. 3d DCA 2022). "Generally, a dismissal of a medical malpractice action for failure to comply with the presuit requirements is reviewed for

---

[2] Tomas attempted to remedy the defect by filing a supplemental affidavit after the statute of limitations expired.

5

abuse of discretion. But the trial court's ruling that the appellants' corroborating affidavit failed to comply with the statutory requirements is reviewed de novo." Oliveros v. Adventist Health Sys./Sunbelt, Inc., 45 So. 3d 873, 876 (Fla. 2d DCA 2010) (citations omitted); see also Univ. of Fla. Bd. of Trs. v. Carmody, 372 So. 3d 246, 253–54 (Fla. 2023) (finding the post-2013 amended medical malpractice statutes "still call[] on the trial courts to make some discretionary decisions" involving the presuit affidavit). This court reviews a question of whether a party is legally indispensable de novo. Fla. Dep't of Revenue v. Cummings, 930 So. 2d 604, 607 (Fla. 2006).

**B**

Tomas first contends the trial court erred in dismissing his claims against Mariners on the basis that his corroborating presuit affidavit was insufficient. We are not so persuaded.

Section 766.203, Florida Statutes (2022), governs the presuit investigation of medical negligence claims. Subsection (2) requires corroboration of reasonable grounds to support a claim "from a medical expert as defined in s. 766.202(6)." § 766.203(2), Fla. Stat. Section 766.202(6), Florida Statutes (2022), in turn, defines such an expert as one who qualifies under section 766.102, Florida Statutes (2022). Section 766.102(5) requires an expert to specialize in the same specialty as the

6

healthcare provider against whom the testimony is being offered. Section 766.102(7) further provides the requirements for expert witnesses testifying on the standard of care as to administrative and other nonclinical issues in actions against hospitals or other medical facilities.

By their plain language, the presuit statutes require corroboration of all medical negligence claims by a qualified expert. See §§ 766.102(5), 202(6), 203(2), Fla. Stat. The purpose of the medical expert opinion is to "assure the defendants, and the court, that a medical expert has determined that there is justification for the plaintiff's claim; that is, the purpose is not to give notice of the plaintiff's claim, but rather to corroborate that the claim is legitimate." Rell v. McCulla, 101 So. 3d 878, 881 (Fla. 2d DCA 2012) (quoting Davis v. Orlando Reg'l. Med. Ctr., 654 So. 2d 664, 665 (Fla. 5th DCA 1995)) (internal quotation marks and alterations omitted); see also DeCristo v. Colum. Hosp. Palm Beaches, Ltd., 896 So. 2d 909, 911 (Fla. 4th DCA 2005); Shands Teaching Hosp. & Clinics, Inc. v. Barber, 638 So. 2d 570, 572 (Fla. 1st DCA 1994). In this vein, "the notice of intent to initiate litigation and the corroborating medical expert opinion, taken together, must sufficiently indicate the manner in which the defendant . . . allegedly deviated from the standard of care, and must provide adequate information for the defendants to evaluate the merits of the claim." Rell, 101 So. 3d at 881

(quoting Ragoonanan ex rel. Ragoonanan v. Assocs. in Obstetrics & Gynecology, 619 So. 2d 482, 484 (Fla. 2d DCA 1993)) (internal quotations and alterations omitted).

Negligent credentialing, otherwise known as negligent privileging, is a distinct tort that "involve[s] wrongful conduct both by the person who is derivatively liable and the actor whose wrongful conduct was the direct cause of injury to another." Grobman v. Posey, 863 So. 2d 1230, 1235–36 (Fla. 4th DCA 2003) (quoting William D. Underwood & Michael D. Morrison, Apportioning Resp. in Cases Involving Claims of Vicarious, Derivative, or Statutory Liab. for Harm Directly Caused by the Conduct of Another, 55 Baylor L. Rev. 617, 619 (2003)). It is administrative, rather than medical, in nature. The plaintiff bears the burden of proving that the hospital negligently granted privileges to a physician it knew or should have known was incompetent or unqualified. See Peter Schmit., Causes of Action for Negligent Credentialing, 18 COA 2d 329, § 6 (2025).

Here, Dr. Sorenson stated in his presuit affidavit that the hospital negligently credentialed Dr. Sandler to perform a total ankle replacement. The affidavit, however, is devoid of detail as to the administrative standard of care relating to credentialing or any supporting facts. Consequently, Mariners was left with no information to evaluate the merits of the negligent

8

credentialing claim.  We therefore impute no error in the finding that the affidavit was deficient.  See Rafferty v. Martin Mem'l Med. Ctr., Inc., 335 So. 3d 144, 144 (Fla. 4th DCA 2022) ("While the corroborating statements the plaintiff submitted with the notice of intent identified reasonable grounds to initiate medical malpractice litigation against the midwife who delivered the baby, nothing in the statements addressed any deficiencies in the care provided by the hospital and its nursing staff.  Thus, dismissal is required . . . ."); Univ. of S. Fla. Bd. of Trs. v. Mann, 159 So. 3d 283, 284 (Fla. 2d DCA 2015) ("[N]othing in the affidavit addresses any deficiencies in the care provided by the nursing staff or supervisors."); Rell, 101 So. 3d at 881 (stating that the notice of intent to initiate litigation and corroborated medical expert opinion "must provide adequate information for the defendant[] . . . to evaluate the merits of the claim") (quotation marks and citations omitted).  To conclude otherwise would allow every plaintiff to automatically transform any individual medical malpractice claim against a physician with credentials or privileges into an administrative claim without complying with the safeguards of section 766.102(7).  See Moncrief v. Kollmer, 397 So. 3d 190, 195 (Fla. 5th DCA 2024) ("That theory, if accepted, would eviscerate the Legislature's authority to impose conditions on the initiation of medical-malpractice suits.").

9

## C

Tomas next contends the trial court erred in dismissing the remaining claims for failure to join the State as an indispensable party. In Florida, the failure to join an indispensable party is properly raised by motion. See Fla. R. Civ. P. 1.140(b)(7). Although the term is somewhat nebulous, the United States Supreme Court has defined an indispensable party as a

> [p]erson[] who not only ha[s] an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience[.]

Shields v. Barrow, 58 U.S. 130, 139 (1854).

The law distinguishes between "indispensable" parties and others who are more aptly characterized as merely "necessary." Joinder is compulsory as to the former, but permissive as to the latter. The Florida Supreme Court has explained this dichotomy as follows:

> Indispensable parties are necessary parties so essential to a suit that no final decision can be rendered without their joinder. This is in contrast to other necessary parties, who have an interest in a suit and ought to be made parties, but who do not have to be joined before a final decision may be rendered. A final decision will bind those parties joined in the suit, but will have no effect on the rights of necessary but unjoined parties.

Hertz Corp. v. Piccolo, 453 So. 2d 12, 14 n.3 (Fla. 1984).

10

In assessing whether a party is indispensable, this court has reasoned that "it is not necessary to join all persons potentially liable for damages for an action to proceed." Diaz v. Impex of Doral, Inc., 7 So. 3d 591, 594 (Fla. 3d DCA 2009). In this vein, "the mere fact that the absence of a party in one lawsuit may lead to multiple litigation is [an] insufficient reason to declare a person to be an indispensable party." W.R. Cooper, Inc. v. City of Miami Beach, 512 So. 2d 324, 326 (Fla. 3d DCA 1987).

Against these principles, we examine the instant case. Here, the providers contend the State is an indispensable party because they provided treatment in their capacity as agents of the State. The flaw in this reasoning is twofold.

First, although the argument is couched in terms of "failure to join an indispensable party," it is essentially an indirect assertion of sovereign immunity. A factual determination as to whether the providers were negligent in treating Tomas is not dependent upon the addition of the State as a party, and whether the providers enjoy immunity as agents of the sovereign has not yet been litigated. While we are cognizant that this court has found that "[g]overnmental immunity may be raised any time[,]" including for the first time on appeal, because it "relates to subject matter jurisdiction," the referral form cannot be viewed in isolation to support the application of sovereign

11

immunity upon this undeveloped factual record.  See State, Dep't of Highway Safety & Motor Vehicles, Div. of Highway Patrol v. Kropff, 491 So. 2d 1252, 1254 n.1 (Fla. 3d DCA 1986).

Second, the parties concede that any potential cause of action against the State or its agencies is barred by the statute of limitations.  The Fourth District Court of Appeal has twice found that

> the underlying rationale of the rule requiring joinder of indispensable parties, i.e., to protect the defendant from the expense of defending multiple separate lawsuits and the exposure to multiple separate judgments arising out of the same claim, [is] eliminated by the expiration of the statute of limitations.

DeToro v. Dervan Invs. Ltd. Corp., 483 So. 2d 717, 722 (Fla. 4th DCA 1985); see also Meyerowich v. Carrere Gen. Contractors, Inc., 611 So. 2d 41, 42 (Fla. 4th DCA 1992) ("[A] court ought not to dismiss an action on the grounds of failure to join an indispensable party if dismissal would foreclose the claim of the present plaintiff[] and the only adverse result of failure to dismiss is a possible subsequent action against the defendant by the missing party.") (quoting Phillips v. Choate, 456 So. 2d 556, 558 (Fla. 4th DCA 1984)) (first alteration in original).  In light of these principles, we conclude that joinder of the State was not required.  See LeGrande v. Emmanuel, 889 So. 2d 991, 996 (Fla. 3d DCA 2004).

Accordingly, we affirm that portion of the order dismissing the negligent credentialing claim against Mariners and reverse that aspect dismissing the remaining claims for failure to join an indispensable party.

Affirmed in part; reversed in part; remanded.