464 So.2d 530 (1985)
BANKERS MULTIPLE LINE INSURANCE CO., Petitioner,
v.
Joseph D. FARISH, Jr., Etc., et al., Respondents.
No. 63363.
Supreme Court of Florida.
January 24, 1985.
Rehearing Denied March 28, 1985.
*531 Michael P. Mullen of Burke, Griffin, Chomicz & Wienke, Chicago, Ill., and Larry Klein, West Palm Beach, for petitioner.
Montgomery, Lytal, Reiter, Denney & Search, P.A., West Palm Beach, Harvie S. Duval, North Miami, and Edna L. Caruso, P.A., West Palm Beach, for respondents.
McDONALD, Justice.
We accepted this case because Farish v. Bankers Multiple Line Insurance Co., 425 So.2d 12 (Fla. 4th DCA 1982), which reverses the trial judge's order granting a new trial, conflicts with Arab Termite & Pest Control, Inc. v. Jenkins, 409 So.2d 1039 (Fla. 1982), and St. Regis Paper Co. v. Watson, 428 So.2d 243 (Fla. 1983). We have jurisdiction pursuant to article V, section 3(b)(3) of the state constitution. Once we take jurisdiction because of conflict on one issue, we may decide all issues. Bould v. Touchette, 349 So.2d 1181 (Fla. 1977). We both quash and approve portions of the district court opinion.
Following her husband's death in an accident, Jill Smith signed a contingent fee contract with the law firm of Farish & Farish to represent her in any claim that she might have. John D. MacArthur knew Smith as a young waitress in the coffee shop of the Colonnades Beach Hotel which MacArthur owned. MacArthur was also president and chairman of the board of Bankers.
Following the accident, MacArthur, through an employee of Bankers, contacted Smith and offered her a job and medical care coverage under Bankers' group insurance policy. He also learned of Smith's contract with Farish. MacArthur, less than an admirer of Farish, soon let his displeasure with the contract for representation be known to Smith. Ultimately, Smith discharged Farish and turned to an attorney selected by MacArthur to represent her for a while. Finally, she contacted a law firm in Chicago (she was living in Illinois after her husband was killed), which firm associated West Palm Beach counsel, who in turn associated Farish to try the case. Farish tried the wrongful death action, but the verdict was less than he had anticipated. It developed that the defendant was insured by Bankers, who satisfied the judgment.
Farish sued MacArthur and Bankers for tortious interference with his contract with Smith, claiming both compensatory and punitive damages. MacArthur subsequently died, with his estate being substituted as a defendant. After what the record discloses *532 to be an acrimonious trial, Farish received $50,000 compensatory and $2,000,000 punitive damage awards against Bankers, but did not prevail on either compensatory or punitive damages against MacArthur's estate. The trial judge granted Bankers' motion for new trial, citing as grounds the failure to join Farish's partners as indispensible parties plaintiff, the court's error in allowing Farish's partner to testify as an expert in expressing a value of the original case, and the court's error in giving improper and incomplete punitive damage instructions. The trial judge denied Bankers' motion for entry of judgment on its behalf because of the exoneration of MacArthur.
Since the last point would result in Bankers prevailing on all issues, we first direct our attention to that issue. It is generally recognized that, when a principal's liability rests solely on the doctrine of respondeat superior, a principal cannot be held liable if the agent is exonerated. Williams v. Hines, 80 Fla. 690, 86 So. 695 (1920). On the other hand, when there are additional acts by the principal, an exoneration of the agent does not automatically preclude a finding of liability against the principal. Cutchins v. Seaboard Air Line Railroad, 101 So.2d 857 (Fla. 1958).
The trial judge recognized this principle and noted it when he denied Bankers' motion. There is no doubt that MacArthur engaged in the primary wrongdoing complained of by Farish. However, Bankers also participated in the wrongdoing by visits of an officer of Bankers with Smith[1] and the offer of Bankers' coverage. While admittedly tenuous, we cannot say, in view of the trial judge's assessment of the facts, that the additional activity of Bankers constitutes an insufficient predicate, when considered in conjunction with MacArthur's activities, for a judgment against Bankers in the face of no liability of MacArthur.[2]
We agree with the district court that under the circumstances of this case no error occurred by failing to add two additional members of the Farish law firm to the complaint. Also, no error occurred by allowing a partner to give opinion testimony. Thus, we concur that these two reasons were insufficient to grant a new trial.
We differ, however, on the reversal of the order granting a new trial because of the punitive damage charges. The trial judge determined that the charges given the jury did not adequately apprise it that awarding punitive damages is discretionary. The district court, noting that the charges varied from the standard jury instructions, found that the jury had been adequately instructed. On the face of the charges one could reach the district court's conclusion.
On the other hand, the trial judge was in the best position to make this evaluation. Farish's counsel frequently referred to these jury charges in his closing argument. The trial judge could evaluate any impact on the jury in determining whether the jury had been charged fairly and impartially on the issue of punitive damages and whether it knew that awarding punitive damages along with compensatory damages was discretionary, even if the elements authorizing punitive damages were present.
A clear understanding of the discretionary nature of punitive damages was especially critical in this case because of the elements that must be proved in a claim of tortious interference with a contract. In order to prevail in his suit Farish had to prove, among other things, that Bankers intentionally and unjustifiedly interfered with the Farish-Smith contract. Sutton v. Stewart, 358 So.2d 119 (Fla. 1st DCA 1978); Smith v. Ocean State Bank, 335 So.2d 641 (Fla. 1st DCA 1976); Symon v. J. Rolfe Davis, Inc., 245 So.2d 278 (Fla. 4th DCA), *533 cert. denied, 249 So.2d 36 (Fla. 1971). Thus, the tort itself has a certain amount of malevolence about it which requires intentional acts. It should be clear to the jury that, even though liability and punitive damages contain the common elements of willfulness, a finding of liability for compensatory damages does not dictate an award of punitive damages. The jury in this case could have been confused. At least the trial judge, who was there, thought so. A trial judge is given broad discretion in granting new trials, and, when there is a reasonable basis to exercise that discretion, an appellate court should not disturb it.
We now direct our attention to whether the court committed reversible error when it charged that "the greater the defendant's wealth, the greater it [sic] must be, the punitive damages assessed in order to get his attention regardless of the amount of compensatory damages awarded to the plaintiff." The district court's approval of the charge as given conflicts with our Arab Termite and St. Regis holdings.
The trial court, at Farish's request, took language from Lassitter v. International Union of Operating Engineers, 349 So.2d 622 (Fla. 1976), in forging this instruction. This court included that language in Lassitter to demonstrate why there is no rule of law that punitive damages must bear some reasonable relationship to compensatory damages. We adhere to that holding, but we emphasize that it is not an accurate rule of law that the greater a defendant's wealth, the greater must be punitive damages. We specifically repudiated this contention in St. Regis. Although similar language appears in Lassitter, it was not stated as a rule of law but as the rationale for formulation of a different rule of law, i.e., that there need be no relationship between compensatory and punitive damages.[3] In Lassitter we did not intend to abandon the required relationship between the amount of punishment and the nature, extent, and enormity of the wrong and all of the circumstances in relation to the tort. The net worth of a defendant is one factor to be considered, but so are the circumstances and the degree of wantonness or culpability. Arab Termite. The instruction as given did not apprise the jury of that fact. We deem it error to fail to do so.
We disavow the contention that Mercury Motors Express, Inc. v. Smith, 393 So.2d 545 (Fla. 1981), is applicable in this case. That decision was not intended to apply to situations where the agent primarily causing the imposition of punitive damages was the managing agent or primary owner of the corporation.
Except on the first grounds discussed in this opinion, the basis for or the amount of compensatory damages is not argued. We therefore approve affirming the compensatory damages but quash that part of the district court's opinion reversing the order for a new trial on punitive damages and remand with directions to grant a new trial on the issue of whether punitive damages should be imposed, and if so, the amount thereof.
It is so ordered.
OVERTON, ALDERMAN, EHRLICH and SHAW, JJ., concur.
BOYD, C.J., dissents with an opinion.
BOYD, Chief Justice, dissenting.
I must dissent to the majority opinion approving the imposition of liability because there was not sufficient proof that any wrongful act was committed.
In my view, the proven conduct of Mr. MacArthur and Bankers Multiple Line Insurance company in their dealings with Mrs. Smith were not in any sense wrongful and did not violate any of the rights of the respondents. The evidence showed that Mr. MacArthur actively persuaded Mrs. Smith to discharge Mr. Farish from representing *534 her on her claim for the wrongful death of her husband. Mr. MacArthur extended special favors to her in an attempt to achieve a settlement. There is a basic problem with recognition of the cause of action of tortious interference with a contractual relation based on these facts: the fundamental right to freedom of speech and association under the United States and Florida Constitutions.
A lawyer who has been retained by a client does not own that client or the client's cause of action. A third person who wishes to communicate to the client that he should change lawyers should be privileged to do so as long as his motive is not to maliciously harm the lawyer. The same goes for all other business and professional relations.
There is nothing wrong in a party to a lawsuit communicating directly with an adverse party. If such communications lead to a settlement or to one party's lawyer being discharged, the lawyer should not be deemed to have any legal cause for complaint about this turn of events.
I agree with the majority opinion that the instructions on punitive damages were incorrect. I do not believe that there should be a new trial, however, because in my view there is no legal ground in this case for the imposition of either punitive or compensatory damages.
NOTES
[1] The officer acted pursuant to instructions from MacArthur.
[2] The district court analyzed this issue on the manner and means that the instructions were handled. We disagree with them that Bankers waived the argument or is estopped to complain of inconsistent verdicts. We predicate our holding on this issue by approving the trial judge's logic.
[3] The fact that a statement of reasoning may be set forth in a judicial opinion does not mean that it is a proper jury instruction.