636 So.2d 30 (1993)
CROWN EUROCARS, INC., d/b/a Crown Mercedes, and Robert Cohen, Appellants/Cross-Appellees,
v.
Charles P. SCHROPP, Appellee/Cross-Appellant.
No. 92-03523.
District Court of Appeal of Florida, Second District.
December 29, 1993.
Rehearing Denied March 10, 1994.
Order Certifying Question March 10, 1994.
Claude H. Tison, Jr., and Jeffrey N. Kramer of Macfarlane Ferguson, Tampa, for appellant/cross-appellee Crown Eurocars, Inc.
Larry D. Goldstein of Watson & Goldstein, St. Petersburg, for appellant/cross-appellee Robert Cohen.
Raymond T. Elligett, Jr., and Mark P. Buell of Schropp, Buell & Elligett, P.A., Tampa, for appellee/cross-appellant.
DANAHY, Acting Chief Judge.
Crown Eurocars, Inc. (Crown) and its employee/sales manager, Robert Cohen, defendants in the trial court, appeal from a judgment entered in favor of the plaintiff, Charles P. Schropp, on a jury verdict awarding compensatory damages against both Crown and Cohen and punitive damages against Crown. Of the several counts presented to it, the jury awarded damages only under Count VI for fraud in Crown's and Cohen's attempts to correct a defect on the exterior finish of a new Mercedes-Benz automobile they sold to Schropp in 1988. Crown and Cohen claim there was insufficient evidence to support the *31 compensatory damage award. Crown alone further argues that even if there were sufficient evidence, Crown could not be held liable for punitive damages under the circumstances of this case. We disagree with Crown and Cohen and find that there was sufficient evidence to support the compensatory damages award. We do, however, agree with Crown that it was improper to award punitive damages against it. Accordingly, we affirm in part and reverse in part.

The Facts
The evidence at trial, viewed in a light most favorable to Schropp, showed the following. The parties' troubles began in October 1988 when Schropp, in the market for a new car, dropped by the Crown Mercedes-Benz dealership in St. Petersburg to inspect the wares on display at Crown's newlyopened premises. He soon narrowed his interest to a particular vehicle and after some hard bargaining Schropp and his salesperson, Paul Miller, with some participation by Cohen, neared an agreement. Schropp was allowed to drive the car to Tampa to pick up his wife so that they both could participate in the final negotiations. There remained some last minute maneuvering with concessions from both Cohen and Schropp. Finally an accord was reached and the deal was struck. This occurred on a Saturday when Crown's service department was closed. Since the Schropps were anxious to begin enjoying their new purchase, they took the car home before Crown could provide the final detailing and clean-up. The following Tuesday Crown sent an employee to the Schropp home to pick up the car for the omitted detailing. This was done and the car was returned to Schropp that evening.
Immediately Schropp noticed some spots on the car's exterior paint finish. He notified his salesperson who told him to wait until the thousand mile service visit when Crown would take care of the spots with a buffing at the same time it would take care of a punch list of several other items that Schropp had noted. At this second service visit a service department employee informed Schropp that the car had wheel locks, which were not an option specified on the window sticker, and that there was no wheel lock key available. Because it was unwise to drive the car with locked wheels and no key to unlock them should wheel or tire service be necessary, a service department employee forcibly removed the wheel locks. This action resulted in some scratching to the wheel covers which Schropp noticed when the car was returned to him. Also, the spots on the paint finish remained causing Schropp further dissatisfaction. One issue at trial was whether buffing had actually been performed at this time to correct the spots on the finish and whether Crown employees had lied to Schropp that a buffing had been done. In any event, there is no doubt that at the third service visit the car was indeed buffed. Despite this, Schropp could still see the spots.
A short time later when the new wheel locks arrived the car was brought in again for its fourth and final service visit. Because Cohen knew that Schropp was still dissatisfied with the condition of the paint finish, Cohen contacted him while the car was at Crown during this final service visit and asked him to leave the car at the dealership a little longer so it could be inspected by a Mercedes-Benz factory representative who would be present at Crown's official grand opening that week. While Crown had provided Schropp with a replacement car during previous service visits, it did not do so on this last occasion.[1] Several days later Cohen told Schropp that Mercedes had authorized the use of a special paint refinishing process not previously used outside the port of entry in Jacksonville. Schropp, leery by now of the runaround he felt he was getting and the disappointing level of service, was mollified somewhat by this promised participation of a Mercedes-Benz representative. Accordingly, he agreed to leave the car with Crown for the time necessary to apply this special process. Schropp understood from Cohen's representations at this time that Crown had to perform this special process as a condition to Mercedes-Benz' considering a return and exchange of the car and that if Schropp was *32 still unsatisfied with the condition of the finish after this special process was performed, Crown would take back the car.
Crown's body shop manager himself performed the special process on the car and obtained what he believed to be an excellent result. Schropp told Cohen after having the car returned from this final service that the paint finish did indeed look improved but it was still not to his satisfaction. Schropp wanted his money refunded as Cohen had promised. Crown refused because it believed the special process resulted in a beautiful finish on the car and no one could see any defect but Schropp. At this point Schropp retained the car and had no further dealings with Crown and Cohen until he sued both of them and Mercedes-Benz.[2]

The Jury's Findings
After exhaustive pretrial proceedings and a week-long trial the case reached the jury. The jury considered the evidence supporting several counts we will outline here although in this appeal we are only concerned with the allegations and proofs concerning Count VI. This is the fraud count relating to the circumstances surrounding the special paint refinishing process.
Among the several counts the jury considered, the first alleged fraud in the inducement against both Crown and Cohen, characterizing the latter as a "managing agent" of Crown. This fraud in the inducement count was based on statements made during the negotiating process before Schropp decided to purchase the car. Schropp alleged that these statements were untrue and that he had relied upon them in agreeing to buy the car.[3] The allegedly false statements included an offer of the first two service visits at the expense of Crown when it turned out that these first two visits were always with Crown's compliments without cost to any customer. Another statement was that the pinstripe was handpainted when in fact it was a decal. Another count named only Crown and alleged that property damage to the car occurred when the wheel locks were forcibly removed and the buffing was done (dents and scratches to the exterior of the car). Schropp named both Crown and Cohen in an additional count alleging conversion claimed to have occurred when Schropp relinquished possession of the car for the ostensible purpose of having a Mercedes-Benz representative inspect it as a precondition of exchange. This conversion count set forth the events surrounding Crown's and Cohen's securing of Schropp's authorization for the special process to correct the defects in the paint finish. Another count, again naming both Crown and Cohen, charged civil theft, incorporated the factual allegations of the conversion count, and sought treble damages. Finally, Count VI, the count with which we are concerned in this appeal, alleged fraud against both Crown and Cohen in their dealings with Schropp concerning the same statements outlined in the conversion count. But the allegations and proofs of fraud focused on their statements alleging Mercedes-Benz's involvement in inspecting the car and authorizing the special process.
The jury received the following standard instruction, 6.12(b), on punitive damages:
If you find that the plaintiff has proven his claim of fraudulent inducement, you shall consider the issue of damages. The amount of damages you should award is the difference between the value of what defendants represented that plaintiff would receive and the actual value which plaintiff received.
If you find for the plaintiff and against the defendants, you may consider whether in the circumstances of this case it is appropriate to award punitive damages, in addition to compensatory damages, as punishment and as a deterrent to others.
... .

*33 Punitive damages may be awarded in your discretion if the conduct of the defendants causing loss or injury to plaintiff was so gross and flagrant as to show a reckless disregard of human life or the safety of persons exposed to the effects of such conduct.
Or, such damages may be awarded if that conduct so entirely lacked any care that the defendants must have been consciously indifferent to the consequences, or they wantonly or recklessly disregarded the safety and welfare of the public.
Finally, such damages may be awarded if defendants' conduct showed such reckless indifference to the rights of others as to be equivalent to an intentional violation of those rights.
You may in your discretion decline to award punitive damages. If you find that punitive damages should be assessed against the defendants, then in fixing the amount of such damages, you should consider the nature, extent and degree of the misconduct and the related circumstances.
You may assess punitive damages against one defendant and not the other, or against more than one defendant in different amounts.
If you find for the plaintiff and against the Defendant Crown Eurocars, Incorporated, and you also find that the greater weight of the evidence shows that the conduct of Robert Cohen was a substantial cause of loss or injury to plaintiff and that such conduct warrants an award of punitive damages against him in accordance with the standards I have mentioned, then in your discretion you may also award punitive damages against the Defendant Crown Eurocars, Incorporated.
The jury returned a verdict in favor of Crown and Cohen on all counts except Count VI in which it found for Schropp. Thus, the jury found that Crown and Cohen had not fraudulently induced Schropp to buy the car, had not damaged it when trying to repair it, had not converted the car to their own use when Schropp left it for them to show to Mercedes, and had not committed a civil theft. The jury did find, however, that Crown and Cohen had committed a fraud on Schropp in the dealings concerning Mercedes-Benz inspecting the car and authorizing the special process. The court had submitted to the jury an interrogatory verdict whose relevant questions were answered in the following manner:
7. Do you find from the evidence, as claimed by the Plaintiff, that the
Defendants committed a fraud against Plaintiff after the date of sale?
 X _____
 YES NO
 (If the answer to Question No. 7 is YES, proceed to Question No. 8. If the
 answer to Question No. 7 is NO, proceed to Question No. 11 and do not
 answer Questions Nos. 8, 9 & 10.)
 8. If you answered YES to Question No. 7 above, what sum of money do you
find from the evidence to be the amount of Plaintiff's compensatory damages
proximately caused by the fraud after the date of sale.
 $ 500.00 
 9. If you answered YES to Question No. 7 above, do you further find from
the evidence, as claimed by the Plaintiff, that the defendants, or any of
them, acted with fraud, actual malice, deliberate violence or oppression,
or such gross negligence as to indicate a wanton disregard for the rights of
Plaintiff with respect to the fraud after the date of sale?
 Answer YES or NO as
 to each Defendant
Crown Eurocars, Inc. X _____
 YES NO
*34
Robert Cohen _____ X 
 YES NO
 (If the answer to Question No. 9 is YES, proceed to Question No. 10. If
 the answer to Question No. 9 is NO, proceed to question No. 11 and do not
 answer Question No. 10.)
 10. If you answered YES to Question No. 9 above, what sum of money do you
assess in favor of the Plaintiff and against the Defendant(s) as punitive
damages with regard to the fraud after the date of sale?
 Crown Eurocars, Inc. $ 200,000.00 
 Robert Cohen $ ___________

Analysis
We first address the threshold issue of the sufficiency of the evidence that Crown and Cohen committed a fraud upon Schropp as charged in Count VI. Although we think it minimal, the jury had evidence before it from which it could conclude that Crown and Cohen had made false statements which were material to Schropp and on which he had relied to his detriment in deciding to leave his car with them so Mercedes-Benz could inspect it and authorize Crown to perform the special process on the car. The jury could thus conclude that Schropp had suffered damages since he lost the use of the auto during the period he relinquished possession to Crown for Mercedes-Benz' inspection of it as well as for the time it took to apply the special process.[4]See Miles v. Kavanaugh, 350 So.2d 1090 (Fla. 4th DCA 1977); Roger Holler Chevrolet Co. v. Arvey, 314 So.2d 633 (Fla. 4th DCA 1975); cf. Schryburt v. Olesen, 475 So.2d 715 (Fla. 2d DCA 1985) (loss of use can satisfy damages element but proofs lacking in case). Accordingly, we find that there was competent substantial evidence to support the award of compensatory damages for fraud.
Having thus found that the evidence supports the jury's award of compensatory damages, we turn now to the issue of the punitive damages. See Ault v. Lohr, 538 So.2d 454 (Fla. 1989) (Ehrlich, C.J., concurring). Crown argues that since all the allegations and proofs in the case relating to the claims of Count VI rest upon what Cohen said or did,[5] when the jury exonerated Cohen no separate liability for punitive damages could then be assessed against Crown. Both Crown and Cohen claim that Cohen's status as a "managing agent," a person with enough responsibility in the corporate organization to bind the corporation by his acts alone, Bankers Multiple Line Insurance Co. v. Farish, 464 So.2d 530 (Fla. 1985), was stipulated to at the final charge conference. Schropp vehemently disputes that such stipulation was entered into although the complaint he filed characterizes Cohen as "managing agent of defendant Crown." However, Schropp is correct that otherwise the record before us contains no written evidence of any such stipulation. See Fla.R.Jud.Admin. 2.060(g). Crown notes that despite the absence of any written stipulation its "footprints" in the record are unmistakable.[6] Regardless *35 of these arguments, resolution of this dispute is irrelevant to our disposition of this appeal. This is so because an examination of the controlling case law, Mercury Motors Express, Inc. v. Smith, 393 So.2d 545 (Fla. 1981), Bankers, and Winn-Dixie Stores, Inc. v. Robinson, 472 So.2d 722 (Fla. 1985), requires us to conclude that whether Cohen was or was not Crown's managing agent, the jury's exoneration of Cohen from that higher level of maliciousness in the commission of the fraud,[7] which is required to support an award of punitive damages, precludes the assessment of punitive damages against Crown.

A. Analysis under Bankers and Winn-Dixie: "Managing Agent"
In deciding whether punitive damages were properly awarded for the post-sale fraud outlined in Count VI, we will first analyze this case on the assumption that Cohen was a "managing agent" when he and his underling convinced Schropp to leave the car for inspection by Mercedes-Benz and authorization of the special process. In Bankers our supreme court set forth the law of corporate liability for punitive damages on account of actions by a managing agent. The court further elaborated on this theory in Winn-Dixie. In Bankers the primary wrongdoer, MacArthur, the president and chairman of the board of the corporation, was exonerated by the jury but the corporation was held liable for punitive damages. The supreme court upheld this punitive damages award against the corporation because it found that the corporation, through another officer acting at the direction of MacArthur, participated in the wrongdoing also. The court found this was a sufficient, although tenuous, predicate for the punitive damages award. Id. at 532. It is important to our disposition of the instant case that in Bankers the corporation's liability was based on the activity of another officer of the corporation. Unlike Bankers, in the case before us there is no evidence that another person with managerial responsibility (besides Cohen) participated in any acts alleged in Count VI. The jury specifically found that Cohen's actions were wrongful in that his actions fulfilled the elements of the tort of fraud, but that in doing so he did not exhibit any maliciousness or willful and wanton behavior.[8] The jury thus exonerated the only person who could possibly be responsible as a managing agent for the claims in Count VI. Therefore, the jury could not, as a matter of law, assess punitive damages against the corporation, Crown, for the actions of its managing agent. Compare Bankers (another officer of corporation besides individually-named president acted maliciously and in concert with president permitting assessment of punitive damages against corporation).
*36 Neither can we find a basis to support the punitive damages award against Crown under a related theory outlined in Winn-Dixie. Schropp argues that we must affirm the award of punitive damages in the instant case because even if Cohen was an exonerated managing agent under Bankers, Crown must answer for the punitive damages under the "direct corporate liability" theory propounded in Winn-Dixie. The supreme court in Winn-Dixie held that the Fourth District Court of Appeal correctly concluded that the case was tried on the basis of direct corporate liability as argued by the plaintiff Robinson. Although the supreme court did not specify what the factual basis for the direct corporate liability was, the opinion of the Fourth District, Robinson v. Winn-Dixie Stores, Inc., 447 So.2d 1003, 1004 (Fla. 4th DCA 1984), reveals that an assistant manager was consulted before the authorities were called in to arrest the suspected shoplifter although there was very little probative evidence on which to do so. In the case before us, there is no evidence beyond Cohen's actions to otherwise show direct corporate liability as claimed in Count VI. To affirm the punitive damages award against Crown, there must be proof of Crown's willful and wanton behavior against Schropp other than through Cohen's actions because the jury found Cohen's actions were not willful and wanton. We reject Schropp's argument on this Winn-Dixie issue and hold there was insufficient proof of any direct corporate liability to support the award of punitive damages for Count VI. Compare Jack Eckerd Corp. v. Smith, 558 So.2d 1060 (Fla. 4th DCA 1990), aff'd, 577 So.2d 1321 (Fla. 1991) (legal "malice" shown to prove malicious prosecution in lack of probable cause to arrest and therefore compensatory damage award affirmed but proofs did not rise to higher level of willful and wanton misbehaviour to support punitive award in shoplifting case). Because there was an absence of the requisite proof we hold that under either Bankers or Winn-Dixie punitive damages against Crown cannot stand in the face of the jury's finding that Cohen, the only actor whose actions concerning the special process could incur corporate liability, did not commit the fraud with the necessary higher degree of actual malice or willful and wanton behavior.[9]

B. Analysis under Mercury Motors: "Non-Managing Agent"
We will assume, for our alternate analysis of the case, that Cohen was not Crown's "managing agent." In doing so we focus on the vicarious liability theory of punitive damages set out in Mercury Motors. Mercury Motors held (a) that before an employer can be held vicariously liable for punitive damages under the doctrine of respondeat superior, there must be "some fault" on its part separate from the employee's and (b) although the wrongful acts of the employee must rise to the level of willful and wanton to support an award of punitive damages against the employee, it is not necessary that the employer's wrongdoing also be willful and wanton. Additionally, the employer's wrongdoing must have foreseeably contributed to the plaintiff's injury. Id. at 549. Mercury Motors teaches that the liability for punitive damages flows through the tortfeasor/employee to the corporate employer only if the level of maliciousness of the employee reaches that higher level necessary to support punitive damages and the employer's contribution is its own related fault. As we have noted, the evidence in the instant case falls short of that higher level of the employee's maliciousness required since the jury exonerated Cohen in its answer to Question *37 No. 9.[10] Furthermore, no other employee was shown to have this higher level of maliciousness concerning the fraud alleged and proved under Count VI.

Conclusion
In summary, under either the Mercury Motors or the Bankers/Winn-Dixie legal standard for corporate liability for punitive damages we hold that given the jury's exoneration in finding that Cohen's wrongful acts were not willful and wanton, and lacking any other evidence that Crown "itself" behaved outrageously, punitive damages may not be assessed against Crown. Thus, we affirm the award of compensatory damages against Crown and Cohen but reverse the award of punitive damages against Crown.
Affirmed in part, reversed in part, and remanded for entry of judgment in accord with this opinion.
THREADGILL and PARKER, JJ., concur.

ORDER CERTIFYING QUESTION

March 10, 1994
The appellee's motion for certification is granted in part and denied in part. The following question is certified to the Supreme Court as one of great importance:
IS THERE A DISTINCTION BETWEEN THE PREDICATE NECESSARY TO HOLD A CORPORATION LIABLE FOR PUNITIVE DAMAGES UNDER A THEORY BASED ON BANKERS' MULTIPLE LINE INSURANCE COMPANY v. FARISH, 464 So.2d 530 (Fla. 1985) AND UNDER A THEORY BASED ON WINN-DIXIE STORES, INC. v. ROBINSON, 472 So.2d 722 (Fla. 1985)?
NOTES
[1] The Schropps did own a second vehicle. Crown kept the Schropp's new Mercedes-Benz a total of eleven days during this fourth and final service visit.
[2] The importer, Mercedes-Benz of North America, originally a defendant in this case, is not a party to this appeal. Schropp voluntarily dismissed it from the case when, after Schropp had possessed the car for approximately two and one-half years, it repurchased the vehicle from Schropp for the full purchase price.
[3] A count for breach of contract by delivering a nonconforming vehicle and seeking rescission was voluntarily dismissed before trial began.
[4] Schropp testified that Crown had his car for the fourth and final service visit approximately eleven days. It was after the wheel locks were installed that Cohen allegedly called him to ask that the car remain for the inspection and application of the special process. Therefore, the period during which Schropp lost the use of the car during the events relating to Count VI was five or six days.
[5] The proofs related to Count VI also contained evidence of what the salesperson said and did. However, this salesperson was an underling of Cohen's. The proofs showed only that this salesperson said or did something at Cohen's direction and never on his own.
[6] For example, the charge as given to the jury on punitive damages, Standard Civil Instruction 6.12(b), is characterized by its title as the "Attributed liability for acts of managing agent, primary owner, or certain others." The Notes on Use cite Bankers and Winn-Dixie Stores, Inc. v. Robinson, 472 So.2d 722 (Fla. 1985), as authority for 6.12(b). Additionally, a transcript of a post-trial hearing shows that the trial judge had denied an instruction requested by Crown which the parties characterized as its "Mercury Motors" instruction, Mercury Motors Express, Inc. v. Smith, 393 So.2d 545 (Fla. 1981). These cases are discussed infra.
[7] This higher level of fault or maliciousness in committing a tort supporting an imposition of punitive damages is generally referred to as "willful and wanton misconduct" or behavior. See Mercury Motors, 393 So.2d at 547.
[8] Although the parties have provided us with excellent briefs in this appeal, they tend to cloud the distinction between the tort of "fraud," originally known as "deceit," and "fraudulent conduct." If the plaintiff proves the elements of the tort of fraud or deceit, i.e., "(1) a false statement concerning a specific material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury to the other party acting in reliance on the representation," S.H. Inv. & Dev. Corp. v. Kincaid, 495 So.2d 768, 770 (Fla. 5th DCA 1986), then the plaintiff is entitled to compensatory damages. The parties here refer to "fraudulent conduct" when they mean conduct of a gross and flagrant nature showing reckless disregard of human life or safety, or so entirely lacking care to show conscious indifference to the consequences, or wantonly or recklessly disregarding the safety and welfare of the public, or showing reckless indifference to the rights of others equivalent to intentionally violating those rights, the proof of which entitles the plaintiff to an award of punitive damages. Winn & Lovett Grocery Co. v. Archer, 126 Fla. 308, 171 So. 214 (Fla. 1936). In order to clarify this analysis we prefer to characterize this egregious conduct as "willful and wanton" or simply "malicious." Although the jury found that Cohen had committed a "fraud" as that term is properly defined in S.H. Investment, see Question No. 7 of the interrogatory verdict, the jury also found in its answer to Question No. 9 that his required level of maliciousness supporting an award of punitives was lacking.
[9] Schropp argues that Cohen testified he always acted within the scope of his employment and in accordance with Crown's "corporate policies." In face of Cohen's exoneration from maliciousness by the jury and without further evidence of other "corporate" wrongdoing in obtaining Schropp's car so that Mercedes-Benz could inspect it, we are not persuaded by this argument. See Jack Eckerd Corp. v. Smith.

We understand Schropp to argue that the Winn-Dixie type of "direct corporate liability" to support an award of punitive damages is distinct from the Bankers "managing agent" type of liability to support punitives. We read the supreme court's opinion in Winn-Dixie as suggesting a variation on "managing agent" liability since a corporation can only exercise its discretion through its principals, i.e., its managing agents; its operations are conducted through its employees.
[10] Schropp contends that Crown is foreclosed from arguing this point because it was the proponent of this question. Although it is true that Crown proposed the jury questions, the record shows that defense counsel preserved the issue by timely raising a question of the possible ambiguity or inconsistency of the interrogatory verdict.