869 So.2d 30 (2004)
Raymond G. INGALSBE, Raymond G. Ingalsbe, P.A., and J. Kent Brown, Appellants,
v.
STEWART AGENCY, INC., d/b/a Stewart Toyota of North Palm Beach; and Earl Stewart, Jr., Appellees.
Nos. 4D03-2618, 4D03-618.
District Court of Appeal of Florida, Fourth District.
March 3, 2004.
Order Denying Rehearing and Granting Certification April 14, 2004.
*31 Richard A. Kupfer of Richard A. Kupfer, P.A., West Palm Beach, for appellants.
Gary M. Dunkel, Greenberg Traurig, P.A., West Palm Beach, and Elliot Scherker, Greenberg Traurig, P.A., Miami, for appellees.
Dock A. Blanchard of Blanchard, Merriam, Adel & Kirkland, P.A., Ocala, for Amicus Curiae Academy of Florida Trial Lawyers.
FARMER, C.J.
The issue we review arises from a lawsuit by a plaintiff's lawyer for interference with his fee contract with his client. The trial court dismissed his claim for failure to state a cause of action, holding that it was barred by absolute immunity. We disagree and reverse.
Basically the facts are these. Appellants [Lawyer] were retained by their Client to sue appellees [Dealer] under the Lemon Law. Lawyer and Client agreed in writing to a fee with 3 different alternatives for calculating the actual amount due. Under the contract the amount due would be either:
(A) 40% of the amount recovered plus an additional 5% (or $10,000 if greater than 5%) for any appeal, or
(B) the amount set by the Court under the attorney's fee statutes in Lemon Law cases if greater than 40% of Client's recovery; or
(C) if Client settled the case against the advice of the Lawyer, Client would pay $300 per hour for all time reasonably spent on the matter.
Suit was filed, and the case was tried to a jury, which awarded some $21,000 in damages. On an appeal of that judgment, we reversed upon a holding that the court improperly excluded defensive evidence and remanded for a new trial.
At some point after remand, Dealer approached Client personally and urged they settle the claim without any lawyers. Dealer and Client reached an agreement whereby Dealer agreed to pay Client $35,000 in damages, as well as attorneys fees in the amount of 331/3% of the recovery and costs. When Dealer learned the actual terms of the fee agreement, Dealer increased the fee percentage to 40% of the recovery, plus $10,000 for the appeal that had been previously taken. Dealer tendered the 40% plus $10,000 to Lawyer, asserting he had tendered payment in full. Lawyer rejected Dealer's tender and instead sued Dealer for interfering with his fee agreement. Dealer moved to dismiss the claim on the grounds of immunity. The trial court's dismissal of Lawyer's claim brought this appeal.
Dealer argues that Lawyer's intentional interference with contractual relationship claim was barred absolutely by the "litigation privilege" established in Levin Middlebrooks Mabie Thomas Mayes & Mitchell, P.A. v. U.S. Fire Ins. Co., 639 So.2d 606 (Fla.1994). That case began as a bad faith action by an insured against an insurance carrier for failing to settle a claim when it should have done so. During discovery in the bad faith action the carrier identified the insured's attorney as a person having relevant knowledge of important facts in the suit. The carrier then filed a motion to disqualify the attorney and certified its intention to call that attorney as a witness during its defense of the bad faith action. The attorney was disqualified but the carrier never called the attorney as a witness at trial in the bad faith action.
The attorney then sued the carrier for intentional interference with a business relationship. In holding that his claim was *32 barred by the privilege the supreme court explained:
"In balancing policy considerations, we find that absolute immunity must be afforded to any act occurring during the course of a judicial proceeding, regardless of whether the act involves a defamatory statement or other tortious behavior such as the alleged misconduct at issue, so long as the act has some relation to the proceeding. The rationale behind the immunity afforded to defamatory statements is equally applicable to other misconduct occurring during the course of a judicial proceeding. Just as participants in litigation must be free to engage in unhindered communication, so too must those participants be free to use their best judgment in prosecuting or defending a lawsuit without fear of having to defend their actions in a subsequent civil action for misconduct." [e.s.]
639 So.2d at 608. Dealer argues that "any act occurring during the course of a judicial proceeding" plainly covers the settlement effected by Dealer and Client without their lawyers. He contends that the broad phrasing of the court's holding applies even in the case we face today involving Dealer's attempt to limit the amount of possible fees due Lawyer under the contract provisions for his representation of Client.
The essential rationale of the supreme court's Levin Middlebrooks holding is in the following sentence:
"Just as participants in litigation must be free to engage in unhindered communication, so too must those participants be free to use their best judgment in prosecuting or defending a lawsuit without fear of having to defend their actions in a subsequent civil action for misconduct."
639 So.2d at 608. Dealer's argument in this case does not fit within the supreme court's rationale. The carrier and its counsel in Levin Middlebrooks were privileged in discovery to use their best judgment to assert a good faith right to call the opposing attorney as a witness because the attorney's testimony might turn out at trial to be crucial to their defense of the bad faith claim. Their decision to name the attorney as one of their own witnesses was privilegedeven though it resulted in the attorney's disqualification from the case because of the implicit importance of the corollary right of civil litigants to "every man's evidence." [1]
Turning to this case and applying the same rationale, we begin with an acknowledgment *33 that Dealer was privileged to propose and conclude a settlement because of the importance the law places on settlements of civil disputes.[2] But there is nothing inherent in the right to settle lawsuits that would compel a corollary right to interfere with a fee contract between one of the settling parties and his lawyer. Without such a legally recognized right, Dealer was not privileged to use the right to settle in such a way as to interfere with the obligation of Client arising from the clear language of the fee contract. Dealer could not thereby set up a settlement imperative directing which contractual alternative for calculating the fee would be controlling after the settlement. Nor could Dealer bind Lawyer to an involuntary rescission of one or more of the contract's reasonable alternatives simply by committing to paying only the one most favorable to Dealer. Nothing in Levin Middlebrooks purports to establish such a corollary right. No legitimate interest of Dealer and Client in settling their dispute gives them a privilege to interfere with Lawyer's fee contract in such a way as to restrict the fee due to only the lowest among the contract's reasonable alternatives.
We hasten to add that Levin Middlebrooks is also not controlling for still another reason. The facts alleged by Lawyer in this case are the functional mirror of the facts of the claim in Bankers Multiple Line Ins. Co. v. Farish, 464 So.2d 530 (Fla.1985). Dealer's relationship to Lawyer in this case cannot be differentiated on any principled basis from Bankers relationship to Farish in Bankers Multiple Line. In that case Farish represented a woman in a personal injury action. The defendant was insured under a policy issued by Bankers. MacArthur, the head of Bankers (who was also acquainted with plaintiff), told the woman of his "displeasure" with her fee agreement with Farish. The woman fired Farish and retained new counsel. In time, new counsel brought Farish back into the case. Farish tried the case, but the result was less favorable than he thought the case was worth. Farish thereupon sued both Bankers and MacArthur for tortious interference with his fee contract.
In affirming the liability of Bankers in that case, the supreme court necessarily approved of the legal sufficiency of the claim by Farish against Bankers. The claim alleged and tried by Farish against Bankers and MacArthur is interference with a contractual relationship. That is the identical claim alleged by Lawyer against Dealer in this case.
The person accused of interfering with Lawyer's fee contract in the present case is the corporate defendant's chief executive. In Bankers Multiple Line, the person accused of interfering was the corporate chief executive of the carrier insuring the defendant. Thus in both cases it was the entity who would pay any resulting judgment in the underlying litigation whose chief executive did the interfering. Hence the persons accused of interfering in the two cases are functionally identical.
Moreover the very tort of interference with a contractual relationship itself necessarily, and logically, can properly include attempts to alter or change only a single contractual provision benefitting the person bringing the action. This obvious implication must be true, whether the attempt is to extinguish the provision entirely *34 or instead simply to alter it, so long as the effect is to interfere with benefits otherwise due the plaintiff.
By structuring the settlement in this case to limit the attorney's fees to only the first alternative of a percentage of the recovery, Dealer was interfering with Lawyer's entitlement to a fee under the alternative fee provisions regarding a fee set by the court and a fee based on an hourly rate. These alternative fee provisions were of obvious importance for the underlying claim that was the subject of the fee agreement. In consumer cases, such as those under the Lemon Law, the actual amount of damages may often be quite modest as against the probable amount of legal work required to achieve them. It is the recognition of that imbalance that is behind the Legislative decision to create an entitlement to fees by statute. Without the possibility that a reasonable fee will be set by the court, consumers may find it impossible to interest lawyers into litigating such claims. In short, if the defendants in such cases were privileged to interfere with the very provision that allows consumers to vindicate such statutory rights, the statutes would become mere ornaments in the statutory code.
Nothing in Levin Middlebrooks even mentions, much less purports to overrule, Bankers Multiple Line. Levin Middlebrooks, the later decision, is utterly silent on any purported change in the law applied in the earlier decision in Bankers Multiple Line. We know that the Florida Supreme Court does not silently overrule itself. See Puryear v. State, 810 So.2d 901 (Fla.2002) (supreme court does not intentionally overrule itself sub silentio; when lower court encounters express holding from supreme court on specific issue, followed by later contrary dicta statement on same issue, court should apply supreme court's express holding in former decision until supreme court itself explicitly recedes from express holding). Thus, from the silence in the later decision in Levin Middlebrooks, we are required to conclude that the earlier decision in Bankers Multiple Line is still authoritative. Bankers Multiple Line compels the conclusion that Lawyer's cause of action in this case is legally sufficient.
It is also crucial to appreciate the procedural context of the trial court's determination in this case. The ruling was made on a motion to dismiss the complaint for failure to state a cause of action. Dealer argues that an affirmative defense of litigation immunity appears on the face of Client's complaint. Rule 1.110(d) does provide that such defenses "appearing on the face of a prior pleading may be asserted as grounds for a motion or defense under rule 1.140(b)." Fla.R.Civ.P. 1.110(d). Here, however, even if Dealer could theoretically have claimed some immunity, he could not have properly done so by motion to dismiss because no immunity appears on the face of Lawyer's complaint in this case. The complaint is permissibly sketchy. It merely alleges the fee agreement, Dealer's unjustifiable interference described in the facts above, and damages suffered by Lawyer.
Because no affirmative defense appears on the face of the pleading, we are required to treat the factual allegations of the complaint as true and consider them in a light most favorable to the plaintiff. Seminole Tribe of Fla. v. Times Pub. Co. Inc., 780 So.2d 310, 312 (Fla. 4th DCA 2001); Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A., 742 So.2d 381 (Fla. 4th DCA 1999) (motion to dismiss for failure to state cause of action admits all well pleaded facts as true; allegations and reasonable inferences arising therefrom must be construed in light most favorable *35 to plaintiff); Burtman v. Tech. Chems. & Prods., Inc., 724 So.2d 672, 673 (Fla. 4th DCA 1999). Thus the ordinary test for dismissals under rule 1.140(b)(6) applies:
"a complaint should not be dismissed for failure to state a cause of action `unless the movant can establish beyond any doubt that the claimant could prove no set of facts whatever in support of his claim.'"
Morris v. Fla. Power & Light Co., 753 So.2d 153, 154 (Fla. 4th DCA 2000); Wausau Ins. Co. v. Haynes, 683 So.2d 1123 (Fla. 4th DCA 1996) (test for motion to dismiss for failure to state cause of action is whether pleader could prove any set of facts whatever in support of claim); Hillman Construction Corp. v. Wainer, 636 So.2d 576, 578 (Fla. 4th DCA 1994); Orlovsky v. Solid Surf, Inc., 405 So.2d 1363, 1364 (Fla. 4th DCA 1981) ("A motion to dismiss should not be granted if the pleader sets forth facts in his complaint upon which relief can be granted on any theory."); Martin v. Highway Equipment Supply Co., 172 So.2d 246, 248 (Fla. 2d DCA 1965) ("a claim should not be dismissed for insufficiency unless it appears to a certainty that the plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim."); Fla.R.Civ.P. 1.140(b)(6).
A motion to dismiss for failure to state a cause of action may be granted only by looking exclusively at the pleading itself, without reference to any defensive pleadings or evidence in the case. Wausau Ins. Co., 683 So.2d at 1125; Pizzi v. Central Bank & Trust Co., 250 So.2d 895 (Fla.1971) (in ruling on motion to dismiss, court must confine itself to allegations of complaint and may not consider affirmative defenses which might absolve defendant of liability at motion for summary judgment or at trial); Kest v. Nathanson, 216 So.2d 233 (Fla. 4th DCA 1968) (same). We conclude that if Lawyer can prove the allegations in his complaint, any resulting money judgment would survive an appellate argument that his underlying legal theory of relief was defective for the immunity reason argued in this case.
REVERSED.
GUNTHER, J., concurs.
GROSS, J., dissents with opinion.
GROSS, J., dissenting.
Allowing a tortious interference cause of action in this case will severely impinge on a client's right to settle a lawsuit, a right which takes paramount importance in our system.
In the trial of the underlying lawsuit, the jury found the Dealer had committed fraud and unfair trade practices against the Client. See Stewart Agency, Inc. v. Lesueur, 785 So.2d 1242, 1243-44 (Fla. 4th DCA 2001). The jury awarded $20,530 in damages. This court reversed because the Dealer was precluded from presenting key testimony at trial. Id. at 1244.
Later, the Dealer negotiated a settlement with the Client for $35,000, seventy percent more than the verdict at the first trial. Also, the Dealer agreed to pay $24,000 in attorney's fees to the Attorneys, forty percent of $35,000, plus $10,000 for appellate fees.
It is inconceivable that a tort could arise out of these facts. As one federal court construing Florida law has written:
[I]t is clear that an attorney never has the right to prohibit his client from settling an action in good faith. A client by virtue of a contract with his attorney is not made an indentured servant, a puppet on counsel's string, nor a chair in the courtroom. Counsel should advise, analyze, argue, and recommend, but his role is not that of an imperator whose edicts *36 must prevail over the client's desire. He has no authoritarian settlement thwarting rights by virtue of his employment.
Singleton v. Foreman, 435 F.2d 962, 970 (5th Cir.1970) (citations omitted).
From the Client's perspective, the settlement was in good faith. The settlement far exceeded the amount of damages set at the first trial. At a second trial, the risk for the Client was enhanced, because the evidence omitted at the first trial would be heard by the jury. The Client was not "required to hazard the outcome of litigation, rather than settle the suit, simply because his attorneys [were] employed on a contingent fee basis." Sentco, Inc. v. McCulloh, 84 So.2d 498, 499 (Fla.1955); see also Statement of Client's Rights for Contingency Fees 10, R. Regulating Fla. Bar 4-1.5 ("You, the client, have the right to make the final decision regarding settlement of a case.... [Y]ou must make the final decision to accept or reject a settlement.").
The primacy of the Client's right to settle a lawsuit compels the conclusion that the Attorneys have failed to state a cause of action for tortious interference. One of the essential elements of the cause of action is that there be "an intentional and unjustified interference" with a business relationship or contract. See Tamiami Trail Tours, Inc. v. Cotton, 463 So.2d 1126, 1127 (Fla.1985) (emphasis added). Parties to a lawsuit may settle an action "without the intervention of their attorneys." McCulloh, 84 So.2d at 499. The Dealer acted in furtherance of a legitimate business interest to settle the lawsuit.
The Dealer did not use improper means to settle; its offer to settle honored one of the contractual provisions. The Dealer tendered $14,000 (forty percent of $35,000) plus $10,000 for the appeal to the Attorneys. A provision in the contract contemplated that it might be settled without the approval of the Attorneys. The Attorneys retained their right under the contract to enforce their contract against their Client. There was therefore no "unjustified" interference with the Attorneys' rights under the contract that would justify the imposition of tort liability.
This scenario is very different from that in Bankers Multiple Line Insurance Co. v. Farish, 464 So.2d 530 (Fla.1985). There the tortfeasor convinced the client to discharge the attorney in an attempt to deprive him of any fee whatsoever. The conduct in this case, which was consistent with the fee contract, does not give rise to an independent tort with the full panoply of tort damages.
Also, this case is controlled by Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. United States Fire Insurance Co., 639 So.2d 606 (Fla.1994). Before Levin, it was clear that the litigation privilege applied to the "torts of perjury, libel, slander, defamation, and similar proceedings that are based on statements made in connection with a judicial proceeding...." Id. at 608. See, e.g., Fridovich v. Fridovich, 598 So.2d 65, 66 (Fla.1992); Ange v. State, 98 Fla. 538, 123 So. 916, 917 (1929), receded from on other grounds by Fridovich, 598 So.2d at 68-69.
Levin expressly extended the litigation privilege to cover the cause of action for tortious interference with a business relationship arising from any act that occurred during the course of a judicial proceeding. The court explained:
In balancing policy considerations, we find that absolute immunity must be afforded to any act occurring during the course of a judicial proceeding, regardless of whether the act involves a defamatory statement or other tortious behavior such as the alleged misconduct at *37 issue, so long as the act has some relation to the proceeding. The rationale behind the immunity afforded to defamatory statements is equally applicable to other misconduct occurring during the course of a judicial proceeding. Just as participants in litigation must be free to engage in unhindered communication, so too must those participants be free to use their best judgment in prosecuting or defending a lawsuit without fear of having to defend their actions in a subsequent civil action for misconduct.
639 So.2d at 608 (emphasis added).
Applying this broad language from Levin, one must conclude that a settlement of a pending lawsuit has "some relation" to the lawsuit. See Jackson v. Bellsouth Telecomms., Inc., 181 F.Supp.2d 1345, 1363-64 (S.D.Fla.2001); Baglini v. Lauletta, 338 N.J.Super. 282, 768 A.2d 825, 833 (App. Div.2001). The Levin litigation privilege applies to bar the cause of action in this case.
To distinguish Levin, the majority relies on horseback opinions, not legal authority. The majority reasons that Levin does not apply because the Dealer did not have a "legally recognized right" to "interfere with a fee contract between one of the settling parties and his lawyer." That approach fails, because the litigation privilege does not depend upon a party's "right" to commit a tort; no one has a "right" to commit perjury, libel, or slander, yet the litigation privilege applies because policy considerations favor the freedom in prosecuting or defending a lawsuit over the preservation of those tort claims when they are connected to a judicial proceeding. See Levin, 639 So.2d at 608.
Next, the majority makes the assumption that Levin cannot apply in this case because Farish stands for an exception to Levin when attorney-client fee contracts are involved. However, as the Dealer argues, there is nothing in Farish even "remotely related to the litigation privilege" that the supreme court extended some nine years later in Levin. The litigation privilege was not an issue in Farish. Because Farish preceded Levin does not mean that tortious interference with an attorney-client fee contract was grandfathered out of Levin.
Significantly, Levin states that the issue of whether the litigation privilege should extend to torts such as tortious interference with a business relationship had "not been previously addressed by this Court." 639 So.2d at 608. This statement indicates that, absent an effort to extend the law, there was no basis for the defendant to claim the privilege in Farish from 1973-1985, when that case was winding through the court system; the privilege did not apply to tortious interference during that time frame. For these reasons, Farish's failure to mention the litigation privilege is understandable. Thus, in deciding whether the litigation privilege should apply in this case, Farish is without legal significance.
To say that a tortious interference cause of action is unavailable here does not mean that a party to a lawsuit is entitled to enter into settlements designed to "defraud or otherwise defeat the payment" of attorney's fees. See Miller v. Scobie, 152 Fla. 328, 11 So.2d 892, 894 (1943).
A line of Florida cases preceding Farish establishes the following rule:
[W]here the client makes a fraudulent or collusive settlement intended to deprive the attorney of his compensation or cost fees, the attorney will be permitted to proceed with the suit in the client's name for the purpose of protecting his interests.
Mabry v. Knabb, 151 Fla. 432, 10 So.2d 330, 337 (1942) (citation omitted).
*38 In Mabry, attorneys were retained to collect rents from a lessee owed pursuant to a lease which contained an attorney's fees provision. The lessee and the lessor entered into a collusive settlement designed to defraud the attorneys. Id. at 336-37. Applying the rule quoted above, the supreme court held that the lessee "could not, by settling the case with lessor, escape his obligation to pay fees which he had contracted to pay under the lease provisions." Warshaw-Seattle, Inc. v. Clark, 85 So.2d 623, 627 (Fla.1955). In Mabry, the supreme court allowed the attorneys to proceed with the case in the name of their client "to ascertain what sum of money or interest in the subject-matter, if any" was owed for legal fees and to recover that amount from the lessee. 10 So.2d at 337.
The Mabry rule does not apply here because the settlement included an offer of attorney's fees consistent with the fee contract, forty percent of the recovery plus $10,000. The rule applies in cases like Mabry and Scobie, where the settlements "included no provision for payment to the attorneys." Sinclair, Louis, Siegel, Heath, Nussbaum & Zavertnik, P.A. v. Baucom, 428 So.2d 1383, 1385 (Fla.1983); see also Soule, Leal & Assocs., P.A. v. Zipnick, 770 So.2d 1282, 1283 (Fla. 4th DCA 2000) (holding that Mabry rule did not apply in case where attorney informed of settlement after the fact and attempts were made to negotiate the fee).
Although it does not involve a tortious interference claim, Sinclair is instructive. Sinclair arose from a divorce case where the parties met without counsel and agreed upon a settlement, which required the wife to "bear the costs of her own professional expenses, including attorneys' fees." 428 So.2d at 1384. The wife's attorney sought, among other things, to pursue the husband for attorneys' fees under the Mabry rule. The supreme court held that the attorney could not pursue the claim, reasoning that, by making the wife responsible for fees, the settlement had included a provision for payment to the attorneys. Sinclair, 428 So.2d at 1385. The court wrote:
Where, as here, the client firmly abides by the terms of the settlement which make her liable for attorneys' fees we must defer to this Court's strong policy of encouraging settlement between parties to avoid the "vexation and expense of further litigation." Harper v. Strong, 135 Fla. 10, 15, 184 So. 848, 850 (1938). We are convinced that in its desire to continue the litigation petitioner wishes only to preserve for its client the greatest possible benefits of the settlement. Nonetheless, it is axiomatic in the attorney-client relationship that an attorney cannot protect his client beyond the client's willingness to be protected.
Id. at 1385-86.
This policy articulated in Sinclair for the Mabry rule is equally applicable to one issue in this case, whether a cause of action for an independent tort arises out of a client's settlement where the client remains bound by his contract with his attorney for fees.
Intent on stretching the law to cover the facts of this case, the majority has expanded the law of tortious interference to create tort liability in conflict with Levin.

ON MOTIONS FOR REHEARING, etc.
PER CURIAM.
We deny the motion for rehearing and motion for rehearing en banc, but grant the motion for certification and therefore certify to the supreme court the following question of great public importance:
"Does the litigation privilege of Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. United States Fire Insurance *39 Co., 639 So.2d 606 (Fla.1994), apply to claims alleging direct interference with an attorney's fee earned by representing a consumer's claim for unfair or deceptive practices in a sale of a motor vehicle, where the interference arose from a seller-initiated settlement without counsel in which the fee due the lawyer was reduced without the lawyer's consent."
FARMER, C.J., GUNTHER and GROSS, JJ., concur.
NOTES
[1] See United States v. Nixon, 418 U.S. 683, 710, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974) (exceptions to demand for every man's evidence are in derogation of search for truth and thus are not lightly created or expansively construed); Miami Herald Pub. Co. v. Morejon, 561 So.2d 577, 581 (Fla.1990) ("The public `has a right to every man's evidence'."); Preston v. City of Fort Pierce, 637 So.2d 326, 330 (Fla. 4th DCA 1994) (rule 1.410(a) codifies principle that party in civil case has right to every man's evidence). As Bentham explained:

"Are men of the first rank and considerationare men high in officemen whose time is not less valuable to the public than to themselvesare such men to be forced to quit their business, their functions, and what is more than all, their pleasure, at the beck of every idle or malicious adversary, to dance attendance upon every petty cause? Yes, as far as it is necessary, they and everybody.... Were the Prince of Wales, the Archbishop of Canterbury, and the Lord High Chancellor, to be passing by in the same coach, while a chimney-sweeper and a barrow-woman were in dispute about a halfpenny-worth of apples, and the chimney-sweeper or the barrow-woman were to think proper to call upon them for their evidence, could they refuse it? No, most certainly."
4 WORKS OF JEREMY BENTHAM 320-21 (J. Bowring ed. 1843).
[2] Robbie v. City of Miami, 469 So.2d 1384, 1385 (Fla.1985) ("[S]ettlements are highly favored and will be enforced whenever possible."); Feldman v. Kritch, 824 So.2d 274, 277 (Fla. 4th DCA 2002) ("Settlements are highly favored as a means to conserve judicial resources, and will be enforced when it is possible to do so.").